FARM CREDIT SERVICES OF MID AMERICA, ACA, Appellant–Plaintiff,

v.

In the Matter of the ESTATE OF Charles Earnest DECKER, Deceased, Appellee–Defendant.

No. 71A05–9209–CV–00313.

Court of Appeals of Indiana, Fifth District.

Nov. 30, 1993.

Jere L. Humphrey, Mark E. Wagner, Kizer & Neu, Plymouth, for appellant-plaintiff.

RUCKER, Judge.

Plaintiff–Appellant Farm Credit Services (FCS) filed a claim against the Estate of Charles Decker. On motion by the estate representative the trial court disallowed the claim because it was filed more than one year after the death of the decedent. FCS now appeals complaining that the alleged acts of counsel for the estate representative induced FCS to delay in filing its claim.

We address the following consolidated and rephrased issues:

1. May the time limitation imposed by statute for filing claims of a creditor against a decedent's estate be extended where counsel for the estate representative knows of the existence of a debt to a creditor, but fails to ensure that the creditor is given timely actual notice of the opening of the estate?

2. Is the one year time limitation imposed by Indiana's Probate Code for filing claims against the estate unconstitutional?

We reverse and remand.

The stipulated facts reveal Charles E. Decker died intestate July 4, 1990. An estate was opened October 3, 1990 and Michael Decker, son of the deceased, was

appointed as personal representative. In 1983, nearly seven years prior to his death, Decker had become indebted to the Federal Land Bank of Louisville Kentucky, now known as Farm Credit Services (hereafter referred to as FCS). The debt resulted from a deficiency judgment FCS obtained after a sheriff's sale of property Decker owned.

On September 25, 1990, an attorney for the decedent sent a letter to FCS advising it of Decker's death, indicating an estate might be opened in the future, and requesting information concerning the 1983 deficiency judgment. FCS responded to the letter one day after the estate had actually been opened. Thereafter, FCS and counsel for the estate exchanged additional letters; however, counsel for the estate did not advise FCS that an estate had been opened and a representative appointed.

On October 11 and 18, 1990, the representative published notice of administration in a newspaper of general circulation. FCS was not listed as a creditor and the representative did not give FCS actual notice as required by statute. FCS received actual notice of the estate in September of 1991 and filed a claim against the estate on September 5, 1991, approximately one year and two months after decedent's death. The trial court entered judgment dismissing the claim as untimely. FCS now appeals.

We first note the personal representative of the estate has not filed a brief for our examination and review. Where no answer brief is filed, the judgment may be reversed if the appellant's brief presents a prima facie case of error. *Watkins v. Alvey* (1990), Ind.App., 549 N.E.2d 74. The prima facie error rule protects this court and relieves it from the burden of controverting arguments advanced for reversal, a duty which properly remains with counsel for the appellee. *In re Marriage of Brown* (1992), Ind.App., 597 N.E.2d 1297. This court is not bound by this rule however and in the exercise of our discretion we may consider the questions properly presented and decide the case on its merits. *S.M.V. v. Littlepage* (1982), Ind.App., 443 N.E.2d 103. We exercise that discretion here.

## I.

Under the provisions of Ind.Code § 29-1-14-1, claims of certain creditors are barred if not filed within one year after the death of a decedent. In like fashion, Ind.Code § 29-1-7-7 concerning notice of administration of an estate, also provides that claims subject to that provision may not be filed more than one year after the death of a decedent. However, as FCS correctly points out, Indiana's Probate Code also requires the personal representative of the estate to serve actual notice on known or reasonably ascertainable creditors and to use reasonable diligence to discover such creditors.[1]

---

1. Ind.Code § 29-1-7-7 dictates in relevant part:
   (a) As soon as letters testamentary or of administration, general or special, supervised or unsupervised, have been issued, the clerk of the court shall publish notice of the estate administration.
   \*      \*      \*      \*      \*      \*
   (d) The personal representative or the personal representative's agent shall serve notice on each creditor of the decedent:
   (1) whose name is not set forth in the petition for probate or letters under subsection (c);
   (2) who is known or reasonably ascertainable within three (3) months after the first publication of notice under subsection (a); and
   (3) whose claim has not been paid or settled by the personal representative.
   The notice may be served by mail or any other means reasonably calculated to ensure actual receipt of the notice by a creditor.

   (e) Notice under subsection (d) shall be served within three (3) months after the first publication of notice under subsection (a) or as soon as possible after the elapse of three (3) months. If the personal representative or the personal representative's agent fails to give notice to a known or reasonably ascertainable creditor of the decedent under subsection (d) within three (3) months after the first publication of notice under subsection (a), the period during which the creditor may submit a claim against the estate includes the period specified under IC 29-1-14-1 [five months after date of first published notice] and an additional period ending two (2) months after the date notice is given to the creditor under subsection (d). However, a claim subject to this subsection may not be filed more than one (1) year after the death of the decedent.

FCS contends its claim should not be barred by the one year limitation period set forth in Ind.Code § 29–1–7–7(e) because FCS is a reasonably ascertainable creditor that did not receive notice as required by statute and the personal representative failed to exercise reasonable diligence to discover that FCS was a reasonably ascertainable creditor as required by statute. According to FCS, if the time limitations are applied to the facts of this case, then "all counsel would have to do is ignore claims, let the year run, and the statute is successfully subverted and the evil it attempts to prevent, thrives." *Brief of Appellant* at 13.

Prior to a 1990 amendment, Indiana's Probate Code ("Code") was solely a non-claims statute. That is, the Code created a right of action against an estate only if commenced within five months after the first publication of notice to creditors.[2] Unless a claim was filed within the time so allowed, no enforceable right of action was created and the claim was forever barred. *Anson v. Estate of Anson* (1980), Ind.App., 399 N.E.2d 432. *See Lewis v. Estate of Smith* (1959), 130 Ind.App. 390, 162 N.E.2d 457.

▮ The 1990 amendments to the Code changed the statutory scheme in two respects: 1) the non-claims provision was modified to require actual notice to known and reasonably ascertainable creditors and 2) a statute of limitations provision was added which provides that a claim may not be filed more than one year after the death of the decedent. In its present form therefore, the Code contains a non-claim component as well as a statute of limitations component. The latter of the two components is important to our discussion here. The time limit imposed by a statute of limitations, unlike the time limit imposed by a non-claim statute, may be tolled on equitable grounds. As this court observed in *Donnella v. Crady* (1962), 135 Ind.App. 60, 185 N.E.2d 623, 625 *trans. denied* (1963) 244 Ind. 205, 191 N.E.2d 499:

> While [non-claim] statutes limit the time in which a claim may be filed or an action brought, they have nothing in common with and are not to be confused with general statutes of limitation.... Equity will estop a party from setting up the statute of limitations as a defense in an action where such party by fraud or other misconduct has prevented a party from commencing his action or induced him to delay the bringing of his action beyond the time allowed by law. The time for commencing an action governed by the general statutes of limitation may thus be extended.

In the case before us FCS argues the estate should be estopped from disallowing the claim on the basis of equity. As grounds for this argument FCS implies the estate engaged in subterfuge and misconduct causing FCS not to file its claim within the time allowed by law. In support, FCS points out that counsel for the estate was aware Decker was indebted to FCS since counsel initiated written correspon-

---

Ind.Code § 29–1–7–7.5 dictates in relevant part:
   (a) A personal representative shall exercise reasonable diligence to discover the reasonably ascertainable creditors of the decedent within three (3) months of the first publication of notice under section 7 of this chapter.
   (b) A personal representative is considered to have exercised reasonable diligence under subsection (a) if the personal representative:
   (1) conducts a review of the decedent's financial records that are reasonably available to the personal representative; and
   (2) makes reasonable inquiries of the persons who are likely to have knowledge of the dece-

dent's debts and are known to the personal representative.
   \*   \*   \*   \*   \*   \*
   (d) If a personal representative complies with the requirements of subsection (b), the personal representative is presumed to have exercised reasonable diligence to ascertain creditors of the decedent and creditors not discovered are presumed not reasonably ascertainable. The presumption may be rebutted only by clear and convincing evidence.

**2.** Ind.Code § 29–1–14–1(a)(1) (1988) (amended effective July 1, 1990).

dence acknowledging the debt and making further inquiry even before the estate was opened. FCS also points out that after the estate was opened, counsel for the estate and FCS exchanged additional letters in which counsel for the estate did not advise FCS that an estate had been opened and a representative appointed. According to FCS, these facts demonstrate that FCS was entitled to receive actual notice of administration of the estate under I.C. § 29–1–7–7(d). FCS concludes that the failure to give actual notice under such circumstances constitutes misconduct warranting extension of the statute of limitations to include FCS' claim.

■ Indiana Code §§ 29–1–7–7, and –7.5, set forth an elaborate and comprehensive scheme to ensure that known and reasonably ascertainable creditors are provided actual notice of the opening of an estate so that claims may be appropriately filed.[3] For example, section 7.5(b) requires the personal representative to exercise reasonable diligence to discover the existence of reasonably ascertainable creditors, including reviewing the decedent's financial records that are reasonably available, and making inquiry of persons likely to have knowledge of the decedent's debts. Further, the statute provides that the personal representative may file an affidavit with the clerk of the court stating the representative has complied with section 7.5(b). In addition, the representative may petition the court for an order declaring that the representative has so complied with the statute and that creditors not known are thus not reasonably ascertainable. *See* Ind.Code § 29–1–7–7.5(a)–(d). In essence, it is clear the Legislature intended that reasonable efforts be employed to notify potential creditors of a decedent's estate.

There can be little question that if the personal representative knows of a creditor's claim against the estate and simply ignores the claim until after the statute of limitation has run, then such action would amount to misconduct which could extend the running of the statute. In the case before us the stipulated facts on which the trial court's judgment is based does not reveal whether the personal representative knew of FCS' claim or whether the personal representative took such action as required by statute to determine the existence of FCS' claim. However, the facts clearly show that counsel for the personal representative was aware FCS was a creditor of the estate and was aware of the amount of FCS' claim. The question therefore is whether the knowledge of counsel is imputed to the representative. This question must be answered in the affirmative.

■ First, the general and long standing rule in this jurisdiction is that absent fraud or collusion between the attorney and the opposing side, acts or omission of the attorney are attributable to the client. *See Ferrara v. Genduso* (1938), 214 Ind. 99, 14 N.E.2d 580 (client bound by attorney's agreement with opposing counsel that judgment could be entered in favor of opposing party); *Houchins v. Kittle's Home Furnishings* (1992), Ind.App., 589 N.E.2d 1190, 1195 (knowledge of attorney, gained through a letter received while acting for a client and within the scope of his employment, is deemed to be the knowledge of the client); *Mid–States Aircraft Engines, Inc. v. Mize Co.* (1984), Ind.App., 467 N.E.2d 1242 (attorney's statement during a dismissal hearing constituted an admission of the client); *School City of Gary v. Continental Electric Co.* (1971), 149 Ind.App., 416, 273 N.E.2d 293 (client bound by counsel's negligence in failing to request change of venue). Second, this rule of law is particularly significant in an area such as probate administration. Very often the personal representative for an estate is a lay person who must depend on trained counsel to interpret, digest, and apply complicated probate rules and statutes. It would strain credulity and stretch common sense to the breaking point to suggest that although counsel for the representative may be aware of his client's statutorily imposed duty to notify reasonably ascertainable creditors, but the representative is not bound to honor claims of such creditors

---

**3.** *See* n. 1, *supra*, for text of statutes.

because the representative was not aware of the statute.

■■■■ We hold that counsel's knowledge of the existence of FCS' claim against the estate is imputed to the personal representative for the estate. Thus, the representative's failure to give FCS actual notice of the opening of the estate was in contravention of Ind.Code § 29–1–7–7. However, our analyses does not end here. The intentional failure to give notice to or discover the existence of a reasonably ascertainable creditor does not automatically extend the applicable statute of limitations. Rather, where such conduct by the personal representative for the estate has prevented a party from commencing an action or induced the party to delay in bringing an action beyond the time allowed by law, then equity may require that the statute be extended. *See Donnella*, 135 Ind.App. at 63, 185 N.E.2d at 625.

■■■■ In this case the record is silent on whether FCS was prevented from filing its claim or induced to delay in filing its claim because of the actions imputed to the personal representative. The trial court did not reach this question, understandably relying instead on the one year time limitation imposed by statute. However, the facts of this case raise a legitimate question of equity. Thus, we must remand this cause to the trial court for an evidentiary hearing to determine whether the equities of this case demand that the one year time limitation be extended to allow FCS to file its claim against the estate.[4]

## II.

■■■■ Because the issue may arise on remand, we address FCS' next concern.

4. When weighing the equities on remand the trial court should consider, among other things, that although FCS did not receive actual notice of the opening of the estate and the appointment of a personal representative, FCS was clearly aware of decedent's death well before the one year time limitation imposed by statute had expired. Counsel for the decedent sent a *letter to FCS in September, 1990, indicating that* Charles Decker was deceased. As a creditor FCS had the authority to open an estate for purposes of prosecuting its claim. Ind.Code §§ 29–1–7–4; 29–1–1–3. FCS took no such ac-

According to FCS, the one year time limitation violates the due process clause of the United States Constitution. A violation of the Fourteenth Amendment due process clause arises when state action is involved in the deprivation of a constitutionally protected liberty or property interest. *Wilson v. Bd. of Ind. Employment Sec. Div.* (1979), 270 Ind. 302, 385 N.E.2d 438, *cert. denied*, 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101. There is no question that a creditor's unpaid bill is a constitutionally protected property interest, *Tulsa Professional Collection Serv., Inc. v. Pope* (1988), 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565.

In this case, FCS argues the opening of an estate sets in motion the machinery of the State to allow for the organization and disposition of estate assets. Thus, concludes FCS, a statute barring a claim of a known or reasonably ascertainable creditor under a one year time provision when no actual notice was provided to such creditor is constitutionally infirm. We disagree.

■■■■ As we have indicated, there is a distinction between a non-claims statute and a statute of limitations. For example, the limitation period of a non-claims statute is an inextricable part of the right of action and unless a claim is filed within the prescribed time set forth in the statute, any right of action then existing becomes unenforceable. *Rising Sun State Bank v. Fessler* (1980), Ind.App., 400 N.E.2d 1164. The rules of waiver or estoppel have no application to non-claims statutes. *Anson*, 399 N.E.2d at 435. In contrast, a statute of limitations provides a defense to parties wholly apart from the creation of a right of action and is subject to tolling based on

tion to protect its interest. The principles of equity aid the vigilant, not those who slumber on their rights. *Cook v. Equitable Life Asur. Soc'y of the United States* (1981), Ind.App., 428 N.E.2d 110. However, while FCS' notice of Decker's death is among the considerations in looking at the totality of the circumstances and weighing the equities of this case, we note that actual notice of death is not sufficient to overcome lack of actual notice of administration of estate proceedings. *Tulsa Professional Collection Serv., Inc. v. Pope* (1988), 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565.

equitable principles. *Id., Donnella,* 135 Ind.App. at 63, 185 N.E.2d at 625. Further, the level of state action involved in a non-claims statute is inherently different from the level of state action involved in a statute of limitations. This distinction is critical to FCS' due process argument.

In *Tulsa,* the United State Supreme Court addressed the constitutionality of an Oklahoma probate statute which allowed a two-month period to commence by notice of publication. In that case a creditor did not file its claim until after the two-month period had elapsed and the claim was disallowed. The Supreme Court held that the due process clause required actual notice be given to known or reasonably ascertainable creditors before the non-claims period could begin to run. *Tulsa,* 485 U.S. at 491, 108 S.Ct. at 1348. In reaching that conclusion, the Court noted that without a probate court's intimate involvement throughout the estate process, the non-claims period would not be activated. *Tulsa,* 485 U.S. at 487, 108 S.Ct. at 1346.

However, unlike a non-claims statute, state machinery has only limited involvement in a statute of limitation. In writing for the majority in *Tulsa,* Justice O'Conner observed:

> The State's interest in a self-executing statute of limitations is in providing a repose for potential defendants and in avoiding stale claims. *The State has no role to play beyond enactment of the limitations period.* While this enactment obviously is state action, the State's limited involvement is the running of the time period generally falls short of constituting the type of state action required to implicate the protections of the Due Process Clause.

485 U.S. at 486–87, 108 S.Ct. at 1345–46 (emphasis added).

▇ In the case before us, the one year statute of limitations is triggered by the death of the decedent, an event wholly separate from governmental machinery, authority, or power. As in *Tulsa,* here the State has no role to play beyond enactment of the limitation period. Absent more significant State involvement the due process clause of the Fourteenth Amendment is not implicated.

For reasons previously discussed, we reverse the judgment of the trial court and remand this cause for further proceedings.

JUDGMENT REVERSED AND CAUSE REMANDED.

SHARPNACK, J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I dissent for these reasons:

1) There is no evidence of fraud. There is no evidence justifying the crossing over of the equitable threshold to overcome clear public policy barriers.

2) Actual notice was given to FCS before and during the administration of the estate through the exchange of correspondence with the attorney-agent of the personal representative. Inattention, lack of inquiry for over a year, and just plain negligence is the reason for the judgment of the trial court. I would affirm the judgment.

3) No equitable defense is available to a claimant who has slept on his rights and is guilty of laches.

4) The one year non-claim statute applies. Under these facts and circumstances, the efficient administration of estates would be grossly frustrated and the public policy of the legislature subverted.

Here, there was no showing of fraud. The public policy statutes established to assure an orderly and expeditious administration of a decedent's estate were ignored by FCS. For over a year after learning of Decker's death and that his estate would be opened, FCS exchanged correspondence with the attorney for the personal representative—never inquiring about the opening of the estate, never inquiring about their claim status, and never filing a claim. During the year of no inquiry and no filing of their claim, FCS exchanged correspondence about something with the attorney for the personal representative, perhaps

the deficiency judgment FCS had been holding for seven years. Whatever this correspondence might reveal, there is no evidence that the personal representative's agent-attorney indulged in fraud. There is no evidence that the personal representative or his agent did anything to keep FCS from filing a simple claim form with judgment attached.

Prior to the 1990 amendments of the Indiana Statutes, a creditor had only five months after the first publication of notice in administered estates to file a claim. If an estate had not been opened for administration, a creditor had only one year from the decedent's death to have an estate opened and file his claim.[1] The self-executing one year statute was a non-claim statute. The one year period has been retained by the Indiana Legislature in its 1990 amendment. *See* Debra A. Falender, *Notice to Creditors in Estate Proceedings: What Process is Due?* 63 N.C.L.Rev. 659, 667–669 (1985).

After *Tulsa Professional Collections Services, Inc. v. Pope* (1988), 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565, notice solely by publication alone to creditors could not satisfy the due process test. Justice O'Connor writing for the majority stated that more was required: "... actual notice to known or reasonably ascertainable creditors." *Id.* at 490, 108 S.Ct. at 1347. This additional notification requirement springs in part from *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 wherein the U.S. Supreme Court stated: "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to appraise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657. *See also Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (Justice O'Connor dissenting).

In *Mennonite*, Justice O'Connor underscored what she meant when referring to the above passage from *Mullane:* "[w]e emphasized that notice is constitutionally adequate when 'the practicalities and peculiarities of the case ... are reasonably met,' " *Mennonite Board of Missions, supra,* at 801, 103 S.Ct. at 2713 (citations omitted). In *Pope*, Justice O'Connor noted that "[w]e have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice." *Pope, supra,* 485 U.S. at 490, 108 S.Ct. at 1347 (citations omitted).

In this appeal, actual notice was given as a practical matter under the circumstances. On September 25, 1990, eight days before the estate was opened for administration, the attorney for the personal representative sent a letter to FCS inquiring about a deficiency judgment held by FCS. The judgment allegedly resulted from the sale of Decker's land. One day after the opening of Decker's estate, FCS responded to the letter which advised FCS that Decker had died and that an estate would be opened. Thereafter, there were a number of letters exchanged between FCS and the attorney for the personal representative.

What is peculiar under these circumstances is the total inaction on the part of FCS to inquire of the attorney for the personal representative as to: the administration of the estate; the failure to contact an attorney to file its claim; the failure to inquire as to the time limitations on filing a claim in the estate; and the complete failure to do anything to protect the judgment which we will assume was a valid judgment.

Over a year expired after Decker's death before FCS took any action to file a claim form and attach its judgment. IND.CODE 29–1–14–1(d) provides: "All claims barrable under subsection (a) shall be barred if not filed within one (1) year after the death of the decedent." The most practical method to give actual notice to a known and ascer-

---

1. Kristin G. Fruehwald, *Notice to Creditors— Publication is no Longer Enough,* 24 Ind.L.Rev. 1045 (1991).

tainable creditor has been accomplished by sending a letter. The letter notified FCS that Decker had died and that an estate would be opened. A letter from an attorney inquiring about a seven year old deficiency judgment is a strong, undeniable notice that someone is worried that he is going to be forced to pay your judgment and that you should make an inquiry. When the letter further indicates that an estate is going to be opened, a definite road map of action has been displayed. This should be enough, but certainly, an additional exchange of correspondence with the attorney for the personal representative would demand some protective action on the part of the holder of the judgment. Here, the record shows none. Actual notice and due process have been served. I would affirm the judgment of the trial court.