**Lori A. BURNETT, Personal Representative of the Estate of David H. Williams, Appellant,**

**v.**

**Concepcion VILLANEUVE; NBD Bank, NA; Chase Manhattan Bank USA; Key Bank USA, NA; Fred Delph, Personal Representative of the Estate of Dorothy I. McKee; Bank of Wolcott & Fidelity & Deposit of Maryland Bank; Margo Tritt, Personal Representative of the Estate of Juanita A. Mahan; Angela K. Martel; Jay Glendenning; Janice Conwell, Personal Representative of the Estate of William E. Lewis; Citicorp Credit Services, MBNA America; and Roger L. Tudor, Personal Representative of the Estate of Marguerite Jane Tudor, Appellees.**

No. 34A02–9610–CV–686.

Court of Appeals of Indiana.

Sept. 30, 1997.

---

Douglas A. Tate, Davis & Murrell Law Firm, Kokomo, for Appellant Lori A. Burnett, Personal Representative of the Estate of David H. Williams.

Jeffrey M. Miller, Noel & Noel, Kokomo, for Appellee Key Bank National Association.

Janell D. Haney, Weltman, Weinberg & Reis Co., L.P.A., Cincinnati, for Appellee Key Bank, USA, NA.

Sally A. Sager, Lacey, O'Mahoney, Mahoney, Sager, King & McCann, Kokomo, for Appellee Estate of Dorothy McKee.

Brian L. Oaks, Button Hillis & Oaks, Kokomo, for Appellees Juanita A. Mahan Estate, Angela Martel and Jay Glendenning.

## OPINION

SULLIVAN, Judge.

Appellant, Lori A. Burnett (Burnett), in her capacity as the personal representative of the Estate of David H. Williams (Williams), brings this interlocutory appeal as a result of the trial court's October 2, 1996 order denying Burnett's motion to dismiss the claims of creditors[1] against Williams' estate. We reverse.

The trial court certified the following issues for the purposes of this appeal:

1. If a creditor opens an estate on the last day of the year following the decedent's death with notice given to all known creditors and by publication pursuant to I.C. 29–1–7–7[,] are claims of creditors which are filed more than one year after the date of death of the decedent barred pursuant to I.C. 29–1–14–1[?]

2. Absent fraud or misconduct on the part of the personal representative or her counsel[,] may equity allow the tolling of the time limit set forth in I.C. 29–1–14–1 requiring claims to be filed within one (1) year of the date of death of the decedent[?]

3. If a creditor opens an estate on the last day of the year following the decedent's death[,] does the application of the one (1) year time limit set forth in I.C. 29–1–14–1 violate the due process clause of the United States Constitution[?] Record at 140–41.

The trial court issued findings and conclusions as part of its order of October 2, 1996 denying the Motion to Dismiss. The facts are essentially undisputed. Williams was an attorney in Kokomo until his death on June 6, 1995. Prior to his death, Williams prepared a will for Josephine Radiance Ingels (Ingels) naming himself as trustee in December of 1989. The trust was for the benefit of Lori Ingels (Burnett) and Randall George Ingels. Ingels died in February of 1990, and an estate was opened. In May 1990, Williams transferred $140,000.00 of the trust funds into his law office's checking account and transferred $130,000.00 from the office's account into the David Williams trust account. Williams disposed of all of the funds of the Ingels' trust other than as provided for by the terms of the trust. When Williams died, Andy M. Burnett, Burnett's husband, was named successor trustee.[2]

Although Williams died on June 6, 1995 and numerous parties had claims against Williams, no one opened an estate for almost a year.[3] On June 6, 1996, Burnett petitioned the court for an order appointing her as personal representative in order to administer Williams' estate. The court granted the petition on the same day. Also on the same day, Andy Burnett filed a claim, as trustee of the Ingels' trust, against the Williams estate. Burnett, as personal representative, provided notice of the administration of the estate to all known claimants pursuant to I.C. 29–1–7–7. She also published a notice of administration in the Kokomo Tribune on June 12, 1996 and June 19, 1996 pursuant to the aforementioned statute. According to the trial court, twelve or more claims were filed against the Williams estate on or after June 7, 1996 totaling over $500,000.00. Burnett denied all of the claims upon the ground that they were filed more than one year after Williams' death and barred pursuant to I.C. 29–1–14–1.

1. This court notes that there are at least 14 separate claims against Williams' estate, including the claim by Andy M. Burnett, the husband of the personal representative. There are 13 named appellees of which four filed briefs. For clarity, all of the parties who have asserted claims against Williams' estate, save the Burnett claim, will simply be referred to as creditors.

2. For the sake of brevity, we will not examine the conversion of the funds of all of the other claimants in this case. Suffice to say, Williams acted as attorney for several other estates and disposed of numerous sums of appellees in much the same way as he did with the funds in the Ingels' trust.

3. It appears that there were no funds in Williams' estate to which the creditors could lay claim. However, as Burnett apparently realized, and the creditors soon thereafter, an estate must be opened within the statutorily provided time limits in order to preserve a claim to subsequently discovered assets. See *South Bend Clinic v. Estate of Ruffing* (1986) Ind.App., 501 N.E.2d 1114 (once estate is opened, a claim must be filed within the requisite time frame in order to preserve a claim although creditor argued that the filing was a useless act).

Burnett argues that the Indiana Code bars claims which are filed more than one year after the decedent's death. I.C. 29-1-14-1, reads in relevant part:

**Limitations on filing claims.**—(a) Except as provided in ·I.C. 29-1-7-7, all claims against a decedent's estate, other than expenses of administration and claims of the United States, the state, or a subdivision of the state, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, shall be forever barred against the estate, the personal representative, the heirs, devisees, and legatees of the decedent, unless filed with the court in which such estate is being administered within:

(1) Five (5) months after the date of the first published notice to creditors; or

(2) Three (3) months after the court has revoked probate of a will, . . . whichever is later.

. . . .

(d) All claims barrable under subsection (a) shall be barred if not filed within one (1) year after the death of the decedent.

I.C. 29-1-14-1 (Burns Code Ed.Supp.1996).

Because the creditors in this case were known, the personal representative's notice is governed by I.C. 29-1-7-7:

**Notice of appointment of personal representative—Creditors to file claims—Form of notice.**—(a) As soon as letters testamentary or of administration . . . have been issued, the clerk of the court shall publish notice of the estate administration.

. . . .

(c) The notice required under subsection (a) shall be served by mail on each . . . known creditor. . . .

(d) The personal representative . . . shall serve notice on each creditor of the decedent:

. . .

(2) who is known or reasonably ascertainable within three (3) months after the first publication of notice under subsection (a). . . .

. . . .

(e) Notice under subsection (d) shall be served within three (3) months after the first publication of notice under subsection (a) or as soon as possible after the elapse of three (3) months. If the personal representative . . . fails to give notice to a known or reasonably ascertainable creditor of the decedent under subsection (d) within three (3) months after the first publication of notice under subsection (a), the period during which the creditor may submit a claim against the estate includes the period specified under I.C. 29-1-14-1 and an additional period ending two (2) months after the date notice is given to the creditor under subsection (d). However, a claim subject to this subsection may not be filed more than one (1) year after the death of the decedent.[4]

. . . .

(i) The notice shall read substantially as follows:

### NOTICE OF ADMINISTRATION

. . . .

All persons who have claims against this estate, whether or not now due, must file the claim in the office of the clerk of this court within five (5) months from the date of the first publication of this notice, or within one (1) year after the decedent's death, whichever is earlier, or the claims will be forever barred.

I.C. 29-1-7-7 (Burns Code Ed.Supp.1995).

### STATUTORY INTERPRETATION

In its conclusions, the trial court noted that the five month limitation period in I.C. 29-1-14-1(a) and the one year limitation period in I.C. 29-1-14-1(d) seemed to be in conflict. However, we do not perceive such a conflict. The statute leads us to the conclu-

---

**4.** As of July 1, 1996, the last sentence of the statute was amended to read: "However, a claim filed under I.C. 29-1-14-1(a) more than one (1) year after the death of the decedent is barred." I.C. 29-1-7-7(e) (Burns Code Ed.Supp.1996). The amendment makes it clear that the bar is absolute.

sion that a claim must be brought within one year of the decedent's death, yet that time period will be shortened under (a) once the first notice is published. I.C. 29–1–14–1(d) simply notes that all claims barrable under (a) are prohibited if not filed within one year of death.[5]

Additionally, the last sentence of I.C. 29–1–7–7(e) declares that a claim subject to that subsection may not be filed more than one year after the decedent's death. Further aiding in our interpretation of the statutes is the notice of administration suggested by the legislature. It clearly notes that the creditor will be able to file a claim within five months of notice or within one year of death—whichever is earlier. Henry's Probate Law and Practice also notes that I.C. 29–1–14–1(d) "bars creditors' claims regardless of whether the creditor has received notice of the estate administration." 1B HENRY, THE PROBATE LAW AND PRACTICE ch. 16, § 1 at 57 (7th ed. Supp.1996).

■ The various claimants argue that the above interpretation of the statutes robs the notice provisions of their value. Appellees (the Juanita Mahan Estate and Angela Martel and Jay Glendenning) eloquently argue that "[t]he rationale for notifying a creditor is to allow him the opportunity to file a claim, not to inform the claimant 'I gottcha' ". Appellee's Brief at 4. While we recognize the appeal of the argument, we are not at liberty to rewrite the statute to provide the claimants with more of an opportunity to file their respective claims. The statute allows for creditors to file claims within one year; however, that one year time limit is abbreviated by the opening of the estate and notice. The notice provisions do not extend the time during which one may file a claim.[6]

It may be noted, however, that had Burnett not opened the estate when she did, none of the parties would have been able to present a claim. Any one of the claimants could have opened the estate at any time during the one year period. They had the same ability and information as Burnett, and they simply failed to exercise their rights by filing a claim. Claimants present no argument as to why Burnett's timely actions on her own behalf should relieve them of their failure to submit a timely claim.

## NONCLAIM PROVISION OR STATUTE OF LIMITATION

■ While an ordinary statute of limitation may be waived and is subject to equitable tolling, a nonclaim statute is not. A nonclaim statute has been described as one which "creates a right of action and has inherent in it the denial of a right of action. It imposes a condition precedent—the time element which is a part of the action itself." *Wawrinchak v. United States Steel Corp.* (1971) 148 Ind.App. 444, 267 N.E.2d 395.

> "A distinction exists between statutes of limitation and special statutory limitations qualifying a given right in which time is made an essence of the right created and the limitation is an inherent part of the statute out of which the right in question arises, so that there is no right of action whatever independent of the limitation; a lapse of the statutory period operates, therefore, to extinguish the right altogether." 54 C.J.S.2D *Limitations of Actions* § 4 (1987).

*See also* 51 AM.JUR.2D *Limitations of Actions* § 15 (1970) ("the limitation of time for commencing an action under a statute creating a new right enters into and becomes a part of the right of action itself and is a limitation not only of the remedy but of the right also.")

A statute which provides a right of action may also mandate the appropriate procedure for claiming the right. The procedure by

---

5. By "[a]ll claims barrable under subsection (a)", subsection (d) means "all claims against a decedent's estate, other than expenses of administration and claims of the United States, the state, or a subdivision of the state, ..." I.C. 29–1–14–1 (Burns Code Ed.Supp.1996).

6. We also note that the purpose of these limitation periods in the probate code is to "finally close decedent[s'] estates and affect a final transfer of title at the earliest possible date consequent with equitable treatment of creditors." HENRY, *supra*, ch. 16 § 1 at 239; *see also*, I.C. 29–1–14–1 Indiana Probate Code Study Commission Comments (West's Code Ed.1994).

which one avails himself of the right of action becomes part of that substantive right.

"The statute is an offer of an action on condition that it be commenced within the specified time, and if the offer is not accepted in the only way in which it can be accepted, by a commencement of the action within the specified time, the action and the right of action no longer exist and the defendant is exempt from liability." 51 AM.JUR.2D, *supra* § .15; *see also* HENRY, *supra* ch. 16 § 1 at 240.

In *Bahr v. Zahm* (1941) 219 Ind. 297, 37 N.E.2d 942, 944, the Indiana Supreme Court concluded that our probate code contained a nonclaim statute as opposed to a general statute of limitation. In acknowledging such, the court quoted liberally from *State v. Evans* (1927), 143 Wash. 449, 255 P. 1035, 1036:

"These probate statutory provisions, it seems to us, are of greater potency in the protection of estates of decedents against the delayed action of claiming creditors than are our general statutes of limitation looking to the mere withholding of the remedy of civil action from suitors because of the lapse of the prescribed periods for the commencement of such actions. An important consideration in our present inquiry is that a creditor's claim against the estate of a deceased person is, in substance, a claim in rem, since it is of necessity only a claim against the property left by the deceased. It is not a personal claim against any one, under our system of administering the estates of decedents, by which system all of the property of the decedent, both real and personal, passes into the hands of the executor or administrator for the purposes of paying debts and distribution of the remaining property to heirs or devisees ultimately entitled thereto. Another important consideration is the affirmative nature of the declarations found in the languages of our Probate Code above quoted, that 'if a claim be not filed within the time aforesaid, it shall be barred,' and that 'no holder of any claim against an estate shall maintain an action thereon, unless the claim shall have been first presented as herein provided,' which prerequisites cannot be waived by an exec-

utor or administrator, as the protection of a general statute of limitation can generally be waived. Thus we think there is evidenced a legislative intent to not merely withhold the remedy, but to take away the very right of recovery out of the property left by a decedent, by failure on the part of a claimant to present his claim as our statute requires."

■■■ The code provision is "a nonclaim statute and, as such, it imposes a condition precedent to the enforcement of a right of action, and precludes recovery when this condition is not met. The time element in the statute is a part of the right of action." *McEwen v. McEwen* (1988) Ind.App., 529 N.E.2d 355, 359.

The policy behind such statutory interpretation is sound. Unlike a general claim against an individual, a claim against an estate is against a finite, ascertainable sum of assets. Oftentimes, claims against an estate will exceed the assets of the estate, and the competing parties will receive less than the full amount to which they are entitled. This division of assets is not possible until such time as the personal representative is made aware of all the claims against an estate. Therefore, a time limit for claims is appropriate and in order to achieve its purpose is made absolute. When the time limit has expired, the personal representative should be able to divide the estate's assets to satisfy the property interests of all of the creditors. If creditors were to be allowed to file a claim after the cutoff date, for any reason, a final resolution of the matters of the estate would be impossible.

The trial court below found that equity tolled the one year limitation period for those claims which were filed within five months from the time that notice was given. The court noted that "[a]lthough the Court does not find that the personal representative ... committed fraud or misconduct, the Court does find that to bar all claims, other than the claim of the personal representative, encourages an inequitable result which in effect encourages a claimant or beneficiary to shut out other claimants simply by delaying the opening of an estate until it is too late to provide meaningful notice within the one (1)

year anniversary of the date of death." Record at 134. As noted above, Burnett did nothing to shut out the other claimants. To the contrary, her action of opening the estate afforded the opportunity, albeit minuscule, to file a claim. However, we address whether equitable principles permit the limitations period to be extended.

This court considered a similar issue in *Farm Credit Servs. v. Estate of Decker* (1993) Ind.App., 624 N.E.2d 491 [7]. In *Decker*, the personal representative failed to give actual notice to Farm Credit Services (FCS) as required by statute. As a result, FCS failed to file a timely claim and the trial court disallowed it. This court noted that prior to a 1990 amendment, "Indiana's Probate Code was solely a nonclaims statute." *Id.* at 494. As a result, "[u]nless a claim was filed within the time so allowed, no enforceable right of action was created and the claim was forever barred." *Id.* Unlike a statute of limitation, a nonclaim statute is not subject to equitable tolling. *Id.*

We decided in *Decker* that the Code was amended to modify the nonclaim provision so as to require actual notice to known creditors and to add a statute of limitation. *Id.* In *Decker*, the decedent died on July 4, 1990, and an estate was opened on October 3, 1990—with Decker as personal representative. An attorney for the decedent had sent a letter to FCS in September advising it of decedent's death and requesting information about decedent's debt. FCS responded to the letter after the estate had been opened, but Decker never provided FCS with actual notice that an estate had been opened. The trial court denied the FCS claim in September

ber 1991 as barred by the one-year limitations period. *Id.* at 493.

Upon appeal, we held that the one-year period was open to equitable tolling. However, our decision in *Decker* was not clear as to which statute (I.C. 29–1–7–7(e) or I.C. 29–1–14–1(d)) was subject to equitable tolling. It appears that because FCS was claiming that I.C. 29–1–7–7(e) should not bar its action, the court's decision merely held that I.C. 29–1–7–7 was a statute of limitation, not a nonclaim statute, and thus was subject to equitable tolling. I.C. 29–1–7–7(e), in its entirety, was added by the 1990 statutory amendments. Acts 1990, P.L. No. 154 § 2.

However, as the Supreme Court recognized, an examination of I.C. 29–1–14–1(d), both before and after the 1990 amendments, reveals little change in the language regarding the operation of the statute (although significant change was made in the language regarding the preconditions to the statute's operation). "All claims barrable under ~~the provisions of~~ subsection (a) ~~hereof~~ shall ~~in any event~~, be barred if ~~administration of the estate is~~ not ~~commenced~~ **filed** within one (1) year after the death of the decedent." Acts 1990, P.L. No. 154 § 9 (stricken portions of the text were deleted from the previous statute, bold portions were added). It would appear that I.C. 29–1–14–1 is still a nonclaim statute. *Contra*, HENRY, *supra* ch. 16 § 1 at 57. Although the preconditions of the statute have changed, i.e. a claim is barred if not filed within a year of death rather than if administration is not commenced, the language regarding the operation of the statute remains the same. Therefore, the Supreme Court held that I.C. 29–1–14–1(d) is a non-

---

7. As discussed herein, this court concluded in *Decker* that I.C. 29–1–7–7(e) is a statute of limitation, thus subject to equitable tolling. We then remanded the cause to the trial court. Upon remand, the trial court determined that equity demanded that the "statute of limitation" should be extended and the cause was again appealed to this court whereupon we determined that the trial court did not err in determining that the "statute of limitation" should be extended. *Estate of Decker v. Farm Credit Servs.* (1995) Ind. App., 653 N.E.2d 534. From that determination, one of the parties sought and was granted transfer in November of 1995. Pursuant to Appellate Rule 11(B)(3), when the Indiana Supreme Court

grants transfer, the opinion of the court of appeals is vacated and held for naught. Therefore, *Decker II* was so vacated. Although the granting of transfer in *Decker II* had no effect upon the precedential weight of *Decker*, it allowed the Supreme Court the opportunity to visit the issues which were at the heart of the original appeal. The Supreme Court did so and overruled *Decker* concluding that I.C. 29–1–7–7(e) is a nonclaim statute. *Decker v. Farm Credit Servs.*, (1997) Ind., 684 N.E.2d 1137 [hereinafter *Decker III* ]. However, in order to more fully understand the result reached herein, we find it necessary to discuss the original *Decker* case at some length.

claim statute.[8] *Decker III, supra,* 684 N.E.2d at 1139.

In *Decker,* the scope of the statute of limitation language was perhaps inadvertently extended by the conclusion that I.C. 29–1–7–7(e) added a statute of limitation "which provides that a claim may not be filed more than one year after the death of the decedent." *Id.* at 494. Clearly, as we recognized in *Decker,* this provision uses statute of limitation language. It provides that a claim may be filed up to two months after the date notice is given to a known or reasonably ascertainable creditor if the personal representative fails to give timely notice to such a creditor. It provides a situation in which the time to file a claim may be extended beyond the five months after first published notice as required in I.C. 29–1–14–1. However, the last sentence of the section clearly states that a claim *may not* be filed more than one year after the decedent's death. Further, the 1996 amendment, *supra,* n. 4, uses even stronger language and states that a claim filed more than one year after death *is barred.* It seems apparent that, while some of the various provisions *within* I.C. 29–1–7–7 may be "statutes of limitation", they are still subject to an outward limitation in the form of an absolute one-year bar. To the extent that such provisions shorten the time allowable to bring a claim, they do not extend that time beyond the one-year absolute bar because all claims are subject to the one-year nonclaim provision found in I.C. 29–1–14–1(d) *and* I.C. 29–1–7–7(e). Such an interpretation harmonizes the meaning of the two provisions.

Somewhat by way of summary, I.C. 29–1–14–1(d) is a one-year nonclaim statute. The last sentence of I.C. 29–1–7–7(e) is a reiteration of that same provision; it points out that in no circumstance will a claim be allowed more than one year after the decedent's death. However, as noted, 29–1–7–7(e) contains within it a shorter statute of limitation which may be extended due to a failure to provide notice. Prior to the amendment of the code, the time to file a

claim was truncated by the publication of notice or revocation of probate of the will. The result was that either a five-month nonclaim provision began from the publication of notice or a three-month nonclaim provision began running from the revocation of probate. The *Decker* court recognized that the 1990 amendment changed the nature of these shorter provisions. The new amendment in the form of I.C. 29–1–7–7(e) noted that if the personal representative failed to provide notice to a known or reasonably ascertainable creditor within three months, that creditor was allowed an additional two months after he received actual notice to file his claim. That is, the five-month period could be extended if the personal representative failed to provide actual notice. However, the last line of section (e) and the Supreme Court's recent opinion remind us that the period may not ever extend beyond a year. The *Decker* court recognized that, because the five-month period allows for an extension if the personal representative fails to provide notice, it was now more properly considered as a statute of limitation. However, the one-year period is still the outward boundary for commencing claims against an estate. No matter who the creditor, no matter the reason for delay, the one-year nonclaim statute must be complied with in order to bring a claim against the estate. *Decker III, supra.*

### EQUITABLE TOLLING

As noted above, neither one-year nonclaim provision in I.C. 29–1–7–7(e) nor I.C. 29–1–14–1(d) is subject to equitable tolling. However, insofar as the shorter time provisions contained within I.C. 29–1–7–7 and 29–1–14–1(a) are concerned, those statutes may be subject to such tolling, only if the personal representative's actions, though misconduct or fraud, induced the creditors to delay in the filing of their claims. *See Donnella v. Crady* (1962) 135 Ind.App. 60, 63, 185 N.E.2d 623, 625, *trans. denied* ("Equity will estop a party from setting up the statute of limitations as a defense in an action where

---

**8.** It is interesting to note that the majority opinion in *Decker* seems to be referring to I.C. 29–1–7–7 in the discussion about equitable tolling while Judge Staton, in dissent, only refers to I.C.

29–1–14–1 in claiming that the legislature had retained the language about a one year period. Such might explain the decisional disagreement.

such party by fraud or other misconduct has prevented a party from commencing his action or induced him to delay the bringing of his action beyond the time allowed by law.")

The shorter time provisions within the two statutes are subject to tolling. Clearly the statute itself provides that a failure on the part of the personal representative to provide actual notice will extend the shorter time limit to file a claim—but not beyond the one-year bar. Instances in which the personal representative might provide notice as provided under the statute but, through fraud or misconduct, induce a party to delay in filing his claim may be envisioned. In such a situation, equity would allow the tolling of the shorter time limitation—but not beyond the one-year bar. Such a situation does not exist in the case before us.

## DUE PROCESS

Finally, appellant challenges the trial court's finding that the aforementioned application of the Indiana Probate Code violates the Due Process Clause of the Fourteenth Amendment. The trial court based its decision upon *Tulsa Professional Collection Services v. Pope* (1988) 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565. In *Tulsa*, the U.S. Supreme Court addressed a nonclaim provision of the Oklahoma Probate Code which required creditors to bring claims against the estate within two months of the first publication of notice. The Court noted that creditors' claims are protected property interests and when a creditor was known or reasonably ascertainable, due process required actual notice of the opening of the estate. *Id.* Published notice, as required by the statute, was not sufficient. *Id.*

In its Due Process analysis, the Supreme Court noted that the Fourteenth Amendment only protects property interests from a "de-

privation by state action." However, the use by private parties of state-sanctioned remedies or procedures does not rise to the level of state action. Also, "the State's involvement in the mere running of a general statute of limitations [is not] generally sufficient to implicate due process." *Tulsa, supra,* 485 U.S. at 485–86, 108 S.Ct. at 1345 (citations omitted). The Court pointed out that short-term nonclaim provisions rely on significant state involvement and specifically noted that it had no occasion to address the constitutionality of nonclaim statutes which run from the time of death. *Id.* at 488, 108 S.Ct. at 1346. The Court said that a self-executing statute of limitation, as opposed to a nonclaim statute triggered by the significant assistance of state officials, is not unconstitutional. *Id.* at 486, 108 S.Ct. at 1345. The Indiana Supreme Court also addressed this concern in *Decker III, supra* at n. 4. Without elaboration, it was noted that the one-year provision was triggered by the death of the decedent, not government machinery, authority or power and is therefore self-executing.

In *Tulsa*, the nonclaim provision at issue was triggered by a probate proceeding in state court. The personal representative, utilizing the state court system, is allowed, by publishing notice, to truncate the one-year nonclaim provision, triggered by death. The U.S. Supreme Court concluded that this "intimate" involvement of the state court was enough to trigger due process.[9]

■ In the present case, we have what could be appropriately referred to as a self-executing nonclaim statute. It is triggered solely by the death of the decedent. In addressing a due process attack upon the statute of limitation in an Indiana medical malpractice action, the Seventh Circuit Court of Appeals noted:

9. Although we agree with our Supreme Court that Due Process is not implicated here, we are troubled by the U.S. Supreme Court's reasoning in *Tulsa.* As the dissent and the Oklahoma Supreme Court pointed out, "self-executing" refers to an absence of a judicial determination. While the state court system is involved in the probate proceedings, it is only a matter of formality and of an administrative nature. The court system makes no determination in the commencement

of the shorter time limitation, the time period simply starts running from publication of notice. The court requires this publication but, as Justice Rehnquist notes in his dissent, "virtually meaningless" state involvement is not enough to trigger Due Process. *Tulsa, supra,* 485 U.S. at 494, 108 S.Ct. at 1349–50 (Rehnquist, J., dissenting); *see also Matter of Estate of Pope* (1986) Okla., 733 P.2d 396, 400.

In general, statutes of limitations provide a desired order and finality to the litigious process by way of an albeit arbitrary, but bright line.

Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate.

*Douglas v. Stallings* (1989) 7th Cir., 870 F.2d 1242, 1247 (citations omitted). In *Douglas,* the Seventh Circuit determined that the Federal Constitution did not dictate that a statute of limitation provide a tolling provision for minority or mental incompetence or a discovery rule. *Id.* at 1250.[10]

In Indiana, in order to bring a claim against a decedent's estate, one must file such claim within one year of the decedent's death. This one-year limitation is supported by the aforementioned principles relating to staleness of claims in general and further enhanced by the desire to close an estate as quickly as possible. It is also reasonable that a party owed money by the decedent would discover that the debtor had passed away within a year of that death. However, when an estate is opened and notice is published, the publication of that notice truncates the creditor's one-year time limit. Therefore, because of the involvement of the Indiana courts, the creditor may be completely unknowingly, deprived of his claim before he reasonably should have known. In order to alleviate this deprivation of rights, the United States Supreme Court recognized that due process requires that, when an estate is opened, additional safeguards must be taken in the form of actual notice to those known or reasonably ascertainable creditors.

CONCLUSION

In conclusion, we hold that the one-year provision of I.C. 29-1-14-1 clearly applies to the creditors' claims, thus they are barred. Furthermore, the aforementioned provision is a nonclaim provision, not subject to equitable tolling. The trial court erred in determining that the statute violates due process.

This cause is reversed and remanded to the trial court with instructions to dismiss the claims of appellees filed more than one year after the death of Williams.

RUCKER and DARDEN, JJ., concur.

---

10. For purposes of due process analysis, no distinction is drawn between true nonclaim provisions and a statute of limitation which is not subject to tolling.