**SCOVILLE REALTY, INC., and Janet Scoville, Appellants–Plaintiffs,**

v.

**David J. MYERS d/b/a A Progressive Realty, Elkhart County Board of Realtors, Inc., and Indiana Association of Realtors, Inc., Appellees–Defendants.**

**No. 20A03–9712–CV–408.**

Court of Appeals of Indiana.

May 11, 1998.

John R. Frechette, Elkhart, for Appellants–Plaintiffs.

**OPINION**

FRIEDLANDER, Judge.

In this interlocutory appeal, Scoville Realty, Inc. and Janet Scoville (collectively "Scoville") appeal from the judgment of the trial court which reverses its earlier judgment and orders resubmission of a real estate commission dispute to arbitration. Scoville presents the following restated issues for review:

1. Did the trial court err in ordering re-arbitration?

2. Did the determination by the Elkhart County Board of Realtors (ECBOR) Grievance Committee that the dispute was "too legally complex" render the matter improper for arbitration?

We affirm.

The dispute arises from a real estate transaction that was closed on July 27, 1990 and the division of the real estate commissions earned from the sale. Prior to the closing, Jerry Scoville, an employee of Scoville Realty, and David Myers, the listing agent, executed an agreement to pay Scoville $10,000 from the sale as a commission. Following the closing, David informed Jerry that there was a dispute and he intended to request arbitration regarding the commission. In August 1990, David filed an Ethics Complaint against Jerry with ECBOR.[1] In November 1990, ECBOR transferred the request for arbitration to the Indiana Association of Realtors (IAR) after deciding that the matter was "too legally complex." *Record* at 80. In December 1990, IAR informed Scoville that the controversy was appropriate for arbitration and, in January 1991, Janet and Jerry signed an agreement to arbitrate in accordance with the Code of Ethics and Arbitration Manual (hereinafter "the Rules").[2]

---

1. ECBOR "treated [the complaint] as a request for arbitration." *Record* at 135.

2. Different portions of the record refer to regulations governing the arbitration as the Profession-

The agreement did not provide for any deviations from the Rules. Following the hearing, IAR arbitrators entered an award in favor of David in the amount of $10,000.

Scoville appealed the award and, in August 1991, the IAR Executive Committee granted the appeal, overturned the award, and returned the case to ECBOR. In September 1991, the Executive Committee rescinded its prior action and forwarded the appeal to an IAR Hearing Panel for a procedural review hearing. In December 1991, the Hearing Panel upheld the award, determining that the April 1991 arbitration hearing "was fair, and that the parties were afforded due process in all material respects. the [sic] arbitration was not defective with respect to due process." Record at 25.

In February 1992, Scoville filed a multi-count complaint against David, ECBOR, and IAR which sought to vacate the arbitration award and alleged, inter alia, that David, ECBOR, and IAR conspired to defraud Scoville of the $10,000 commission. Upon cross-motions for summary judgment, the court vacated the arbitration award and ruled that the remaining issues raised by Scoville were more appropriate for trial or further hearing. Following a pretrial conference in which the court reviewed its summary judgment ruling, the court determined that the dispute should be resubmitted to arbitration by IAR prior to further litigation. In April 1996, Scoville filed what has been treated as a "motion to reconsider", asserting that such determination constitutes error. The court upheld the determination and this appeal then ensued.

1.

■ Initially, we note that Myers, ECBOR, and IAR chose not to file an appellees' brief. We have the discretion, where the appellee fails to file a brief on appeal, to reverse the trial court's decision if the appellant makes a prima facie showing of reversible error. Phegley v. Phegley, 629 N.E.2d 280 (Ind.Ct.App.1994), trans. denied.

In ruling on Scoville's motion to reconsider, the trial court found that, pursuant to Ind.Code Ann. § 34-4-2-13(c), the matter should be resubmitted to arbitration and not-

ed that "[t]he Arbitrators exceeded their powers when they did not follow the guidelines set out in the Professional Standards Policy Manual." Record at 151. IC § 34-4-2-13 provides in pertinent part:

(a) Upon application of a party, the court shall vacate the award where:

1) the award was procured by corruption or fraud;

2) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

3) the arbitrators exceeded their powers and the award can not be corrected without affecting the merits of the decision upon the controversy submitted;

4) the arbitrators refused to postpone the hearing . . . or

5) there was no arbitration agreement. . . .

\*    \*    \*    \*    \*    \*

(c) In vacating the award on grounds other than stated in subsection (a)(5) of this section the court may order a rehearing before new arbitrators chosen as provided in the agreement, or in the absence thereof, by the court in accordance with section 4 of this chapter, or if the award is vacated on the grounds set forth in subsection (a)(3) or (a)(4) of this section the court may order a rehearing before the arbitrators who made the award or their successors appointed in accordance with section 4 of this chapter.

IC § 34-4-2-13 allows a court vacating an award to order a rehearing by the original arbitrators where the award is vacated because the court determined that the arbitrators exceeded their powers and a correction of the award is not possible without affecting the merits of the determination. Southwest Parke Educ. Assoc. v. Southwest Parke Comm. School Trustees Corp., et al., 427 N.E.2d 1140 (Ind.Ct.App.1981).

Scoville asserts that, although the award may have been vacated, in part, for reasons under § 13(a)(3), the award was additionally vacated on grounds which fall within

al Standards Policy Manual. No explanation is provided as to the relationship between the Rules and the Manual. However, from the way in

which the proceedings address the Rules and the Manual, we shall treat the Rules as a part of the Manual.

§ 13(a)(1) and (2), i.e., corruption, fraud, and impartiality of the arbitrators. Therefore, Scoville argues, the remand to IAR pursuant to § 13(c) is contrary to the statute.

Scoville offers, in support of its contention, excerpts from the trial court's summary judgment ruling:

> The [IAR] arbitrators acted outside the scope of the agreement to abide by [the Rules] and further behaved in such a manner that suggests corruption or fraud.

> \* \* \* \* \* \*

> At the very least, this suggests from the very beginning in this matter the allegedly impartial ECBOR favored [David] Myers.

*Record* at 135.

■ Although the court stated that the IAR arbitrators' conduct suggested fraud or corruption, and that ECBOR was potentially partial to David, we note its failure to find such fraud, corruption, or impartiality. In other words, the court did not base its order of a further hearing on the suggestion of fraud, corruption, or impartiality. However, upon finding that the board exceeded its powers, the court ordered an appropriate statutory remedy—a rehearing before the arbitrators. Because the order complied with the statutory guidelines, the trial court properly denied Scoville's motion to reconsider.

### 2.

Scoville argues that the dispute is no longer subject to arbitration because, *inter alia,* 1) the statement by ECBOR that the case was "too legally complex" rendered the action inappropriate for arbitration, and 2) IAR did not acquire jurisdiction to arbitrate from ECBOR.[3]

In February 1995, the court stated, in its summary judgment ruling:

3. Additionally, Scoville maintains that the Rules prohibited the IAR Executive Committee's September 1991 rescission of its prior decision. Scoville sets forth Part V, Section 37(c) in support of the contention. However, such reliance is misplaced because Section 37(c) governs procedural review proceedings.

4. Section 18 is not included in the record. However, we assume the court intended to cite Article 14, Code of Ethics, Section 18, which states:

On November 21, 1990, the ECBOR Grievance Committee sent the issue to the Indiana Association of Realtors claiming the issue was "too legally complex". According to the Rules, "if either the Grievance Committee or the arbitration panel determines that because of the amount involved or the legal complexity of the controversy the dispute should not be arbitrated, the arbitration shall automatically terminate." Rules, Part Three, Section 20(C). The only situation in which the Rules provide for a transfer to the state agency is when the local board is incapable of providing an impartial arbitration panel. Rules, Part One, Section 18.[4] This matter was therefore transferred to the IAR without proper justification, in violation of the governing Rules.

*Record* at 136 (footnote supplied). In January 1996, the court reviewed its summary judgment determination. Upon concluding that, as a matter of law, the dispute should be resubmitted to arbitration prior to any litigation, the court stayed "further proceedings in this Cause in order that the matters be resubmitted to litigation by the Indiana State Board of Realtors...." *Record* at 6.

■ Scoville is incorrect in asserting that the determination by ECBOR that the issue was "too legally complex" rendered the dispute inapplicable to arbitration. First, ECBOR's intention was not to cancel arbitration; rather, ECBOR transferred the matter to IAR, requesting "the State Association's Professional Standards Committee hear the attached request for arbitration on the ground that it is too legally complex." *Record* at 80. In support of its contention, Scoville relies upon the Rules Part III § 20(c) and Part IV § 29. We cannot address the relevance of Part IV § 29 because it is not in the record. Scoville's reliance upon Part III

> In instances where a local Member Board determines by resolution of its Board of Directors that it is incapable of providing an impartial panel for the conduct of an ethics or arbitration hearing, the complaint or the request for arbitration may be referred by the Board President to the State Association of REALTORS for a hearing.

20(c) is misplaced because the section governs instances where the local board has determined that arbitration is inapplicable to the controversy.

Based upon the reasons above, we hold that the determination by the Grievance Committee did not render arbitration inappropriate.

We now address IAR's jurisdiction to arbitrate.

██ In the summary judgment ruling, the trial court deemed the transfer of the dispute to IAR inappropriate because such action was not premised upon a finding by ECBOR that it could not provide an impartial panel. Subsequently, the trial court reviewed its ruling and ordered that the matter be resubmitted before the IAR. Unfortunately, the trial court did not provide its reasons for the latter ruling. However, Jerry, Janet, and David voluntarily agreed to arbitration pursuant to the Rules. The Rules provide that ECBOR has authority, in certain circumstances, to transfer a matter to IAR. Scoville correctly notes that where a local member board determines that it is incapable of providing an impartial panel for an arbitration hearing, the request for arbitration may be referred to the State Association of Realtors for a hearing. *See* Art. 14, Code of Ethics, Sec. 18. In the instant case, there is no evidence that ECBOR transferred the controversy due to its inability to provide an impartial panel. Furthermore, Scoville has failed to include the Rules in their entirety. Absent a complete set of the Rules we must, in order to accept Scoville's argument, assume that the inability to provide an impartial panel is the only instance in which transfer to the State Association of Realtors is permitted. We refuse to engage in such speculation.

Based upon the evidence before us, we conclude that IAR had jurisdiction to arbitrate the controversy.

Judgment affirmed.

KIRSCH, J., concurs.

SULLIVAN, J., concurs in part and dissents in part with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I agree that re-arbitration by *new* arbitrators is not mandated, in light of the fact that the trial court did not explicitly find fraud or corruption.

Nevertheless, I fully agree with the original conclusion of the court to the effect that from start to finish the "entire arbitration proceeding [conducted by ECBOR and IAR] was one mistake and rule violation after another", and that the procedures and proceedings "suggested corruption or fraud" and partiality. Record at 138, 135.[5]

Accordingly, I would require the order for re-arbitration to direct that a totally new and impartial set of arbitrators be appointed. The new arbitrators should not be appointed by, or owe allegiance to, either ECBOR or IAR. The new arbitrators should be appointed by the Elkhart Superior Court pursuant to I.C. 34–4–2–4, as specifically contemplated by I.C. 34–4–2–13(c).

5. It may well be that the Rules and the Manual are phrased in such a way as to promote the use of inappropriate methods and procedures, or, in the alternative, to promote the abuse of appropriate methods and procedures.