BUTLER UNIVERSITY, Appellant–Respondent,

v.

In the Matter of the Unsupervised ESTATE OF George C. VERDAK, Deceased, Appellee–Petitioner.

No. 49A04–0308–CV–431.

Court of Appeals of Indiana.

Sept. 23, 2004.

Philip A. Whistler, Kevin M. Alerding, Brian J. Paul, Ice Miller, Indianapolis, IN, Attorneys for Appellant.

Charles B. Huppert, Indianapolis, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Liene Dindonis filed a petition to reopen the estate of George Verdak ("the estate") in Marion Superior Court, Probate Division, which alleged that other property of the estate had been discovered. The probate court granted the petition and issued an order reopening the estate. Shortly thereafter, Butler University ("Butler") filed objections to Dindonis's petition. After a hearing was held on Butler's objections, the probate court issued an order overruling Butler's objections. Butler has filed this interlocutory appeal arguing that the probate court abused its discretion when it reopened the estate because Dindonis failed to prove that the property was subsequently discovered property of the estate. Dindonis cross-appeals and argues that Butler did not have standing to object and its appeal is untimely.

We affirm.

### Facts and Procedural History

In 1971, Butler received an extensive collection of ballet costumes, musical scores, and painted canvas stage drops from the Ballet Russe de Monte Carlo. Butler has used numerous items from the Ballet Russe collection in its ballet performances over the past thirty-two years. George Verdak served as the Chairman of Butler's Dance Department during the 1960s and 1970s. As head of the department, he was the principal intermediary involved in Butler's receipt of the Ballet Russe collection. Verdak retired from Butler in 1978.

On September 15, 1993, Verdak died testate. Under his will, William. Glenn ("Glenn") was the sole beneficiary. Verdak also named Glenn as personal representative of his estate and authorized Glenn to administer his estate in an unsupervised capacity. Appellant's App. pp. 9–10, 15–16. Glenn was a member of the Butler Dance Department faculty for approximately twenty years and was a faculty member when Butler received the Ballet Russe collection.

On July 19, 1994, Glenn filed a closing statement for the Verdak Estate, which verified that the estate had been fully administered and that Glenn had "taken possession of the personal property of the decedent and the other assets of the decedent's estate." Appellant's App. pp. 28–29. There were no Ballet Russe items listed on either the estate inventory or the inheritance tax return.

Glenn subsequently died testate on June 28, 2000. Dace Dindonis ("Dace") was the sole beneficiary and personal representative of the Glenn estate. Less than one year later, Dace died intestate. Her sole living relative is her sister, Liene Dindonis ("Dindonis"), and Dindonis is presently serving as the personal representative of Dace's estate, as well as the successor personal representative of the Glenn estate. Both estates are currently pending in Marion County.

In 2002, Butler became aware that an art dealer in Florida was offering for sale a number of Ballet Russe costumes and other artifacts. Butler subsequently learned that the source of the costumes was the Glenn estate and the costumes were found in the basement of the former

Verdak residence. In July 2002, at Butler's request, the Marion Superior Court preliminarily enjoined Dindonis, the Glenn estate and the art dealers from selling the items from the Ballet Russe collection. That litigation is still pending in the Marion Superior Court.

On September 25, 2002, Dindonis filed a petition to reopen Verdak's estate. In the petition, Dindonis alleged that "during the pendency of the Butler suit against Liene Liga Dindonis certain evidence has been collected which indicates that certain property, namely ballet sets, drops and costumes (formerly known as the Ballet Russe de Monte Carlo Collection and the Ruth Page Collection), which property had been deposited with said Butler University, was in fact the property of George C. Verdak." Appellant's App. p. 32. Dindonis also asserted that she is "qualified to be appointed successor personal representative and is entitled to be appointed personal representative of said Estate under I.C. 29–1–10–1." Id. The probate court granted Dindonis's petition on the same day it was filed and entered an order reopening the estate. The probate court also appointed Dindonis "successor Administrator of the Estate." Appellant's App. p. 5.

On October 3, 2002, Butler filed objections to Dindonis's petition to reopen the Verdak estate arguing that Dindonis is not an interested person in the estate, that the petition does not set forth circumstances sufficient to authorize reopening the estate, and any action to recover the property referenced in the petition is time-barred. Appellant's App. p. 38. After a hearing was held on Butler's objections, on June 18, 2003, the probate court issued its order overruling Butler's objection. The probate court specifically found:

6. While serving as personal representative, Mr. Glenn knew of the existence of the property in question.

7. However there is no evidence that Mr. Glenn was aware that the estate might have a claim to ownership of the property.

8. The estate's claim to ownership of the property is "other property of the estate" within the meaning of IC 29–1–7.5–8.

Appellant's App. pp. 7–8. At Butler's request, the trial court certified its order for interlocutory appeal, and our court accepted jurisdiction of this appeal on September 22, 2003.[1] Additional facts will be provided as necessary.

### Standard of Review

▪▪▪ The trial court entered findings of fact and conclusions of law sua sponte. We therefore apply the following two-tier standard of review: whether the evidence supports the findings, and whether the findings support the judgment. *Learman v. Auto Owners Ins. Co.*, 769 N.E.2d 1171, 1174 (Ind.Ct.App.2002), *trans. denied.* Findings and conclusions of law will be set aside only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them. *Id.* "A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made." *Id.* We consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility. *Klotz v. Klotz*, 747 N.E.2d 1187, 1190 (Ind.Ct.App.2001). Sua sponte findings control only as to the issues they cover, and a general judgment standard of review controls as to the issues upon which there are no findings. *Learman*, 769 N.E.2d at 1174. A general judg-

1. Butler's motion for oral argument is hereby denied.

ment will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.*

## I. Butler Is a Proper Party to This Action

Dindonis argues that Butler is not a party to this action because Butler 1) does not have standing to object to the petition to reopen the Verdak Estate and 2) did not move to intervene in the estate. Butler contends that it has standing in the Verdak Estate because it is an interested party and that Dindonis waived her argument with regard to intervention.

Dindonis argues that Butler does not have standing to object to the petition to reopen the Verdak Estate because it is not a claimant or beneficiary of the Estate. Br. of Appellee at 8. Butler argues that it has standing 1) because its property is being claimed by Dindonis and 2) because it is an "interested person" under the probate code. Reply Br. of Appellant at 10–12.

Under common law, to have standing a party must demonstrate a personal stake in the outcome of the proceeding and that he or she has sustained, or is in danger of sustaining, some direct injury as a result of the conduct at issue. *See Ind. Civil Rights Comm'n v. Indianapolis Newspapers, Inc.,* 716 N.E.2d 943, 945 (Ind.1999). Since the purpose of reopening the Verdak Estate is to allow the Estate to attempt to assert rights to the entire Ballet Russe collection, Butler's personal stake in the outcome of the probate court proceedings is evident and it is clear that the outcome of those proceedings could pose direct injury to Butler.

More importantly, Butler also has standing under the Probate Code because it is an "interested person." "Interested persons" are defined as "heirs, devisees, spouses, creditors, or any others having a property right in or claim against the estate of a decedent being administered." Ind.Code § 29–1–1–3(a)(13) (1999). Butler likely has a "claim against" the Verdak estate because the Estate is seeking to recover the Ballet Russe collection, which Butler has claimed as its own for many years. Thus, we conclude that under both common law and the probate code, Butler has standing and is a proper party to this action.

Dindonis also argues that Butler was required to file a motion to intervene, but she did not raise that argument until after Butler sought certification of the probate court's June 18, 2003 order for interlocutory appeal. Butler argues that Dindonis has waived this argument. Reply Br. of Appellant at 9. Our court has held that issues are not preserved for appeal unless a proper and timely objection is made. *See Sullivan v. City of Evansville,* 728 N.E.2d 182, 193 n. 8 (Ind.Ct.App.2000). We therefore conclude that Dindonis has waived her argument that Butler was required to file a motion to intervene.

Waiver notwithstanding, however, we disagree with Dindonis's argument that Butler was required to file a motion to intervene in order to become a party to this action. As an interested person, Butler properly objected to the reopening of the Estate in the manner prescribed by the probate code [2] and thus became a party in this matter.

## II. Timeliness of the Appeal

Dindonis argues that the probate court did not properly certify its order for interlocutory appeal and Butler did not file its notice of appeal within the thirty-day time

2. *See* Ind.Code § 29–1–1–10 (1999).

period prescribed by Indiana Appellate Rule 14(B). We disagree.

■ The probate court initially granted Dindonis's petition to reopen the Verdak Estate on September 25, 2002. Butler filed its objections to that petition shortly thereafter, and on June 18, 2003, the probate court issued its order overruling Butler's objections. Dindonis argues that Butler was required to file its notice of appeal within thirty days of the trial court's September 25, 2002 order. Specifically, she asserts that the issue addressed in the September 25, 2002 order is the same issue Butler has raised in this appeal: whether the trial court abused its discretion by reopening the Verdak Estate. Br. of Appellee at 12.

■ However, we note that courts certify *orders* for interlocutory appeal, not *issues*. *See Harbour v. Arelco, Inc.*, 678 N.E.2d 381, 385–86 (Ind.1997); Ind. Appellate Rule 14(B) (2004). Moreover, "[a] trial court has the inherent power to reconsider any of its previous rulings so long as the action remains in fieri." [3] *Stephens v. Irvin*, 734 N.E.2d 1133, 1135 (Ind.Ct. App.2000), *trans. denied.* Further, Butler did not become a party in this case until it filed its objections to Dindonis's petition. Accordingly, we conclude that Butler timely sought certification of the probate court's June 18, 2003 order overruling Butler's objections to Dindonis's petition.

■ In a similar argument, Dindonis contends that the probate court was required to certify its September 25, 2002 order granting Dindonis's petition to reopen the Verdak Estate. Br. of Appellee at 14. Specifically, she argues that the trial court did not certify the September 25, 2002 order and consequently the sufficiency of the petition to reopen the Verdak Estate cannot be tested on appeal. *Id.* at 15.

Dindonis's argument again assumes that once the trial court has addressed an issue, a subsequent order addressing the same issue cannot be an appealable interlocutory order. However, as stated above, this court has found otherwise. *See Stephens* 734 N.E.2d at 1134–135. Therefore, we conclude that the trial court was not required to certify its September 25, 2002 order and we may address the sufficiency of Dindonis's petition to reopen on appeal.[4]

### III. Petition to Reopen the Estate

Butler argues that the probate court abused its discretion when it granted Dindonis's petition to reopen the Verdak estate. Specifically, Butler argues that Dindonis was required, but failed to, prove that 1) "there is in fact additional 'property of the estate,'" 2) "the claim to the property (or evidence upon which the claim is

---

**3.** Dindonis argues that Butler's October 3, 2002 objection was nothing more than a motion to reconsider. In some cases Indiana courts have treated filings as if they were motions to reconsider, even if they were not originally specified as such. However, in those cases the court had previously ruled on the same issue(s) brought by the movant prior to treating the movant's filing as a motion to reconsider. *See Scoville Realty v. Myers*, 694 N.E.2d 1152, 1154 (Ind.Ct.App.1998) *trans. denied; Schrock v. Gonser*, 658 N.E.2d 615, 615 (Ind.Ct.App.1995) *trans. denied.* Here, the trial court had not previously ruled on Butler's objections to the petition to reopen

the Verdak Estate; therefore, we will not treat its objections as a motion to reconsider.

**4.** Appellate Rule 14(B)(1)(d) provided Dindonis fifteen days in which to file her response to Butler's motion to certify the June 18, 2003 interlocutory order. Although the probate court granted Butler's motion to certify one day before Dindonis timely filed her objections to that motion, the record shows that the probate court subsequently considered Dindonis's response and denied the motion. *See* Appellee's App. pp. 6–25.

based) was 'subsequently discovered' after the closure of the estate," and 3) "there is a meritorious excuse for the delay in discovering and asserting the claim." Br. of Appellant at 17. Butler also asserts that Dindonis's was required to offer, or at least identify in her petition, the "certain evidence" that she has discovered which indicates that the property belonged to Verdak. Br. of Appellant at 15.

■■■ Initially, we address Butler's reliance on *In re Estate of Banko*, 622 N.E.2d 476 (Ind.1993), in support of its argument that Dindonis was required to prove the allegations in her petition to reopen the estate. In *Banko*, a petition to reopen Banko's estate was filed by Banko's daughter who argued that certain assets, which were transferred into joint accounts owned by Banko and his wife, were not distributed as Banko intended. *Id.* at 478. Concluding that the trial court properly denied the petition to reopen the estate, our supreme court observed that Indiana's Non–Probate Transfer Act creates a presumption that a survivor to a joint account is the intended receiver of the proceeds in the account. *Id.* at 479. Further, to overcome the presumption, "a party challenging the survivor's right to the proceeds must present clear and convincing evidence that the decedent at the account's creation did not intend the joint tenant to receive the proceeds or that the intent of the decedent changed before death and the decedent by written order informed the financial institution of this change." *Id.* The court then concluded that the petitioner bore the burden of proving that Banko did not intend for his wife to receive the funds held in the joint accounts. *Id.*

*Banko* is clearly distinguishable from the facts and circumstances presented in this case. In *Banko,* the petitioner attempted to reopen the estate to challenge Banko's mental capacity to consent to transfers of certain assets into joint accounts, and was in effect alleging fraud. However, in this case, Dindonis has filed a petition to reopen alleging subsequently discovered property and is not challenging the final settlement of the Verdak Estate. Therefore, we conclude that our supreme court's holding in *Banko* is not dispositive of the issues presented in this appeal.

■■■ Turning to the merits of this case, we observe that the probate court may reopen an unsupervised estate to administer subsequently discovered property under Indiana Code section 29–1–7.5–8, which provides:

> If other property of the estate is discovered after the estate has been settled and the personal representative discharged or three (3) months after a closing statement has been filed, the court upon petition of any interested person and upon notice as it directs may appoint the same or a successor personal representative to administer the subsequently discovered estate. If a new appointment is made, unless the court orders otherwise, the provisions of this title apply as appropriate; but no claim previously barred may be asserted in the subsequent administration.

Ind.Code § 29–1–7.5–8 (1999).[5]

■■■■ When we interpret a statute, we must bear in mind the following principles of statutory construction.

> If, after an estate has been settled and the personal representative discharged, other property of the estate shall be discovered, or if it shall appear that any necessary act remains unperformed on the part of the personal representative, or for any other

5. The probate court reopened the estate under section 29–1–7.5–8. However, we also observe that Indiana Code section 29–1–17–14 appears to apply generally to both supervised and unsupervised estates and provides in relevant part:

The object of statutory construction is to determine, give effect to, and implement the intent of the legislature. If a statute is susceptible to reasonable and intelligible construction, it is the duty of the court to construe it to give effect and validity to each provision thereof. The statute is examined as a whole, and while the language itself is analyzed, this Court will refrain from overemphasizing a strict literal or selective reading of individual words.

*Sullivan v. Day,* 681 N.E.2d 713, 717 (Ind. 1997) (citations omitted). Moreover, our court will not read into a statute that which is not the manifest intent of the General Assembly; therefore, it is as important to recognize what a statute does not say as it is to recognize what it does say. *Robinson v. Gazvoda,* 783 N.E.2d 1245, 1250 (Ind.Ct.App.2003), *trans. denied.*

Initially, we note that section 29–1–7.5–8 does not require a hearing. The statute requires only that the interested person file a verified petition to reopen the estate.[6] *See* Ind.Code § 29–1–1–9 (1999). Therefore, under the plain language of section 29–1–7.5–8, the probate court may exercise its discretionary authority to reopen an estate when an interested person files a verified petition alleging specific facts from which the court can conclude that 1) other property of the estate was discovered 2) after the estate had been settled and the personal representative was discharged (or three months after a closing statement was filed). Because the statute does not require a hearing or any evidentiary proof, we disagree with Butler's assertion that an interested person is required to prove the verified allegations in his or her petition before the estate may be reopened.[7]

Our approach is consistent with at least one other court that has addressed this issue. The Missouri Supreme Court has held that a party seeking to reopen an estate must "state with particularity the facts upon which the court can conclude that specific assets of the estate are newly discovered and are subject to administration in accordance with the directives of the decedent's will[.]" *State ex rel. Armstrong et al. v. Kohn,* 850 S.W.2d 86, 88 (Mo.1993).[8]

---

proper cause, the court, upon the petition of the discharged personal representative or any person interested in the estate and, without notice or upon such notice as it may direct, may order that said estate be reopened. It may reappoint the personal representative or appoint another personal representative to administer such property or perform such act as may be deemed necessary. Unless the court shall otherwise order, the provisions of this article as to an original administration shall apply to the proceedings had in the reopened administration so far as may be, but no claim which is already barred can be asserted in the reopened administration.

Ind.Code § 29–1–17–14 (1994 & Supp.2003). *See also* Debra A. Falender, Henry's Indiana Probate Law & Practice § 807, pp. 350–51 (8th ed. 1989) ("Although the language of I.C. 29–1–17–14 has not been amended to render it specifically and clearly applicable to the reopening of an unsupervised administration, it must be assumed that an unsupervised estate that has been closed under the provisions of I.C. 29–1–7.5–3 may be reopened by compliance with I.C. 29–1–17–14.").

6. We note that Dindonis's original and amended petitions to reopen the Verdak Estate were verified as required by law.

7. Moreover, we observe that at the hearing held on its objections to Dindonis's petition to reopen the Verdak Estate, Butler could have, but failed to, present any evidence establishing that the Ballet Russe property does in fact belong to Butler.

8. In *Kohn,* in their petition to reopen the estate, the petitioners merely alleged that "the petitioners 'have developed reason to believe that the administration of the estate has not been completed and there remains unfinished

Butler also argues that "implicit in the statutory scheme is a requirement that petitioners like Dindonis explain and justify the delay in asserting their claim. A litigant who seeks relief from final judgment based on a claim of newly discovered evidence has long been required to show a meritorious excuse for the delay in discovering and asserting the new evidence." Br. of Appellant at 16. Underlying Butler's argument is its assertion that reopening a closed estate is the equivalent of setting aside a final judgment under Trial Rule 60(B).

Our court has previously determined that by enacting statutes which allow for estates to be reopened, our General Assembly "clearly intended to change the former rule so that an estate might have the benefit of assets omitted in the former administration although there had been a previous final settlement." *Newton v. Hunt*, 122 Ind.App. 146, 153–54, 103 N.E.2d 445, 448 (1952). Further, our court observed that "the former settlement stands, and, without setting it aside, the estate may be opened for the purpose of administering omitted assets." *Id.* at 154, 103 N.E.2d at 448. " 'The former settlement continues to be a final adjudication as to all matters except these omitted and unadministered assets.' " *Id.* (quoting *Mich. Trust Co. v. Probasco*, 29 Ind.App. 109, 113, 63 N.E. 255, 256 (1902)).

Therefore, and contrary to Butler's argument, reopening the estate is not the equivalent of setting aside a final judgment because the estate is reopened solely to administer the subsequently discovered property and does not affect any distributions of property made before the estate

was initially closed. Under the plain language of the statute, an interested person filing a petition to reopen is not required to allege a meritorious excuse justifying the delay and we cannot conclude that such requirement is "implicit in the statutory scheme."

We now turn to Butler's argument that Dindonis's petition to reopen the estate did not meet the requirements of section 29–1–7.5–8. In her amended petition to reopen the Verdak estate, Dindonis alleged in relevant part:

4. That the Estate of George C. Verdak was closed on July 19, 1994, by the filing of a closing statement.

* * *

16. On June 14, 2002, Butler University filed suit against Liene Liga Dindonis in her capacity as successor personal representative in the Estate of William Glenn and individually, and others[.]

17. That during the pendency of the Butler suit against Liene Liga Dindonis certain evidence has been collected which indicates that certain property, namely ballet sets, drops and costumes (formerly known as the Ballet Russe de Monte Carlo Collection and the Ruth Page Collection), which property had been deposited with said Butler University, was in fact the property of George C. Verdak and, therefore, such property is "other property of the estate discovered after the es-

business of the estate requiring additional administration.' " *Id.* at 87. The court determined that the probate court exceeded its jurisdiction in reopening the estate because in their pleadings, the personal representatives made "no factual claim that they have discov-

ered assets after the estate closed and they were discharged; there is no factual averment laid before the probate court that would support a judicial finding that goods or assets of the decedent remain unadministered." *Id.* at 88.

tate has been settled" which has not been administered.

18. That at the time such deposits were made, in the years 1969 for the Ruth Page Collection, and in 1971 for the Ballet Russe de Monte Carlo Collection, said George C. Verdak was on the staff of Butler University and had made arrangements with Butler University to warehouse the collections, which agreement stood (in some form) at the time of filing of the initial petition herein on September 25, 2002.

19. Said ballet sets, drops, and costumes have not been administered in the Estates of George C. Verdak, William Glenn or Dace Dindonis.

20. That the petitioner herein is an interested person in said Estate of George C. Verdak in that she is the resulting beneficiary of said estate and will have the right to receive the unadministered property if such property is administered.

Appellant's App. pp. 48–51.[9]

In her petition, Dindonis alleged that other property of the Verdak Estate had been discovered and provided a specific description of said property. Moreover, Dindonis described the manner in which

she became aware that said property was property of the Verdak Estate. The petition also states that the Verdak Estate was closed in 1994 and that Dindonis made her discovery in 2002 concerning the ownership of the Ballet Russe property. In her petition, Dindonis has therefore alleged specific facts from which the probate court could reasonably conclude that Dindonis discovered other property of the Verdak Estate.[10]

 Finally, we address Butler's argument that the probate court abused its discretion when it reopened the Verdak Estate because Dindonis's claim is "plainly barred by the statute of limitations." Br. of Appellant at 20. In support of this argument, Butler relies on the following provision of section 29–1–7.5–8: "If a new appointment is made, unless the court orders otherwise, the provisions of this title apply as appropriate; but no claim previously barred may be asserted in the subsequent administration." Butler asserts that Dindonis's claim is previously barred within the meaning of section 29–1–7.5–8 because her claim is time-barred by the six-year statute of limitations for actions to recover possession of personal property. Br. of Appellant at 21 (citing Ind.Code § 34–11–2–7(3) (1999 & Supp.2003)).

9. We observe that Dindonis's petition is substantially in compliance with the format suggested by Aline Anderson in Anderson's Probate Forms 2d. *See* Anderson's Probate Forms, Vol. II, § 15:104, pp. 143–45.

10. In both its Appellant and Reply briefs, Butler continually argues that Dindonis was required to prove that William Glenn, the personal representative of the Verdak Estate, was not aware that the property belonged to Verdak. It is undisputed that Glenn had knowledge of the existence of the property; however, as the probate court found "there is no evidence that Mr. Glenn was aware that the estate might have a claim to ownership of the

property." Appellant's App. p. 7. Moreover, it is likely impossible to prove Glenn's knowledge as to the ownership of the property because he is deceased. Further, Butler's reliance on *Estate of Moskal*, 50 Ill.App.3d 291, 8 Ill.Dec. 354, 365 N.E.2d 592 (1977) is misplaced. In that case, it was undisputed that the petitioner was aware that the property at issue was property of the estate prior to the time the estate was closed. *See id.* at 594. Therefore, we do not agree with Butler's assertion that Dindonis was required to prove Glenn's lack of knowledge as to the ownership of the property before the Verdak Estate could be reopened.

Dindonis argues that the language of the statute on which Butler relies "refers to claims against the estate that have been barred by the running of the non-claims statute.[11] That is to say that a reopening of an estate does not present claimants with a new window of time to file claims against the estate." Br. of Appellee at 24–25. Further, Dindonis observes that Butler may raise the statute of limitations issue during a suit filed against Butler for recovery of the Ballet Russe property. Essentially, Dindonis argues that she is not required to prove that the estate's right to recover the Ballet Russe property falls within the applicable statute of limitations as a condition precedent to reopening the Verdak Estate. We agree.

The term "claim" is a term of art under the probate code and is defined as follows:

> "Claims" includes liabilities of a decedent which survive, whether arising in contract or in tort or otherwise, funeral expenses, the expense of a tombstone, expenses of administration, and all taxes imposed by reason of the person's death. However, for purposes of IC 29–1–2–1 and IC 29–1–3–1, the term does not include taxes imposed by reason of the person's death.

Ind.Code § 29–1–1–3 (1999 & Supp.2003). Examining the provisions of section 29–1–7.5–8 as a whole, we conclude that the reference to "no claim previously barred" does refer to those claims that are barred under Indiana Code section 29–1–14–1. Pursuant to section 29–1–7.5–8, the probate court is therefore not required to inquire into the timeliness of the estate's right to recover subsequently discovered property of the estate. Further, Butler may raise a statute of limitations defense during any lawsuit filed to recover the Ballet Russe property, and such litigation would be a more appropriate forum for adjudication of that issue.

Accordingly, we conclude that the probate court did not abuse its discretion when it granted Dindonis's petition to reopen the Verdak Estate under Indiana Code section 29–1–7.5–8 and overruled Butler's objections. Moreover, we observe that our holding is consistent with our view that a prompt and orderly determination of the ownership of the Ballet Russe property at issue is of primary importance considering the circumstances presented. Once title is properly determined in probate court, claims in courts with ancillary jurisdiction will be resolved as well.

## Conclusion

Butler is an interested party and had standing to object to Dindonis's petition to reopen the Verdak Estate. Moreover, Butler's appeal was timely. Finally, the probate court did not abuse its discretion when it granted Dindonis's petition to reopen the Verdak Estate and overruled Butler's objections.

Affirmed.

BARNES, J., and CRONE, J., concur.

---

11. The non-claims statute is found at Indiana Code section 29–1–14–1.