**ESTATE OF George C. VERDAK, by its Personal Representative, Liene Liga Dindonis, Appellant–Plaintiff,**

and

**Liene Liga Dindonis, Individually and as Personal Representative of the Estate of William Glenn, Norman Crider, and Toby Liebovitz, Appellants/Cross–Appellees,**

v.

**BUTLER UNIVERSITY, Appellee/Cross–Appellant.**

**No. 49A04–0510–CV–615.**

Court of Appeals of Indiana.

Nov. 6, 2006.

---

John F. Ittenbach, Jr., Ittenbach, Johnson, Trettin & Koeller, Indianapolis, IN, Attorney for Appellants.

Philip A. Whistler, Scott D. Matthews, Ice Miller LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

This appeal stems from a disagreement between Butler University (Butler) and the Estate of George Verdak (the Estate) over the ownership of the Ruth Page and Ballet Russe de Monte Carlo dance collections, which consist of ballet sets, costumes, musical scores, and other dance memorabilia (collectively, the Dance Collections). As detailed more fully below, Butler initially sued Norman Crider, Toby Liebovitz, and Liene Dindonis in both her individual capacity and as the personal representative of the estate of William Glenn. Dindonis later filed a separate suit against Butler on behalf of the Estate. Over the Estate's objections, the trial court consolidated these two cases. This appeal stems from orders entered in both cases: (1) the trial court's grant of summary judgment in favor of Butler in the Estate's lawsuit, and (2) the trial court's partial grant of a motion to dismiss certain claims in Butler's lawsuit.

The Estate, by its personal representative Dindonis, appeals from the trial court's grant of summary judgment in favor of Butler on the Estate's claims of replevin and conversion. Specifically, the Estate argues that there are two material facts that Butler did not prove: (1) the date on which Verdak got notice that Butler was claiming title to the Dance Collections, and (2) the date on which Verdak should have discovered, using ordinary diligence, that Butler was claiming ownership of those items. Among other things, the parties ask that we determine when the statute of limitations began to run on the Estate's claims.

Dindonis, Crider, and Liebovitz (collectively, the Defendants) appeal from the trial court's order denying their motion to dismiss Butler's replevin claim. Specifically, they argue that this action was barred by the nonclaim statute [1] of the Indiana Probate Code and should have been dismissed by the trial court.

Butler appeals from the trial court's order granting the motion to dismiss Butler's claims for conversion and statutory damages under the Indiana Crime Victims' Relief Act.[2] Specifically, Butler argues that it sufficiently alleged facts in its complaint to support both claims.

Concluding that summary judgment was properly granted in favor of Butler on the Estate's claims and that the Defendant's motion to dismiss was properly partially granted, we affirm the judgment of the trial court.

1.  Ind.Code § 29–1–14–1.

2.  Ind.Code § 34–24–3–1.

*FACTS* [3]

Verdak was the chairman of the Butler Dance Department during the 1960s and 1970s. As the chairman, Verdak was the principal intermediary involved in Butler's receipt of valuable dance collections that consisted of costumes, stage sets, and other dance memorabilia.[4] In 1969, Butler acquired a collection of ballet sets and costumes from Ruth Page, a dancer from Indianapolis who had developed a regional ballet company. In 1971, Butler acquired stage sets, musical scores, costumes, and other artifacts from the Ballet Russe de Monte Carlo (Ballet Russe), a world famous ballet company that was no longer in business.

On September 15, 1993, Verdak died testate and left his property to Glenn as the sole beneficiary and personal representative of the Estate. Glenn filed a closing statement for the Estate on July 19, 1994. He filed an inheritance tax return on April 18, 1994. Neither document made reference to any items from the Ballet Russe or Ruth Page collections.

Glenn died testate on June 28, 2000. Dace Dindonis (Dace) was the sole beneficiary and personal representative of the Glenn estate. Less than one year later, Dace died intestate. Dindonis, Dace's sister and sole heir, became the personal representative of Dace's estate as well as the successor personal representative of the Glenn estate.

In June 2002, Butler became aware that a Florida art dealer was offering for sale a number of Ballet Russe costumes and artifacts. Butler subsequently learned that the costumes had been found in the basement of the former Verdak–Glenn residence and had been sold by Dindonis, Crider, and Liebovitz.

### Butler v. Defendants

On June 14, 2002, Butler filed a complaint against the Defendants alleging that they had converted property that belonged to Butler. Butler filed an amended complaint on September 23, 2002, and detailed six counts against the Defendants: (1) replevin, (2) conversion, (3) Indiana Crime Victims' Relief Act, (4) tortious interference with a contractual relationship, (5) tortious interference with a business relationship, and (6) slander of title. In July 2002, at Butler's request, the Marion County Superior Court enjoined Dindonis, the Glenn estate, and the Florida art dealer from selling the Ballet Russe items pending a trial on the merits.

On August 13, 2004, the Defendants filed a motion to dismiss counts I, II, and III of Butler's complaint. A hearing was held on October 6, 2005, and the trial court granted the motion to dismiss as to counts II and III—the conversion claim and the Indiana Crime Victims' Relief Act claim. The trial court denied the motion as to count I—the replevin claim. The Defendants petitioned our court to seek interlocutory relief, and we granted their petition on December 20, 2005. The Defendants now appeal the trial court's order denying their motion to dismiss count I and Butler appeals the trial court's order dismissing counts II and III of its complaint.

### Verdak Estate v. Butler

On September 25, 2002, Dindonis filed a petition to reopen the Estate, which had closed in 1994. Butler objected to the petition, claiming that Dindonis had not

---

**3.** We heard oral argument in Indianapolis on October 11, 2006. We commend counsel for their presentations.

**4.** As detailed further below, the parties vehemently disagree over whether the Ruth Page and Ballet Russe Collections were originally given to Butler or to George Verdak in his individual capacity.

proved that she had discovered additional property of the Estate. Notwithstanding Butler's objections, the probate court issued an order reopening the Estate on June 18, 2003. Butler appealed, and on September 23, 2004, our court affirmed the probate court's decision to reopen the Estate. *Butler Univ. v. Estate of Verdak*, 815 N.E.2d 185, 197 (Ind.Ct.App.2004).

On September 24, 2004, the Estate, through its personal representative Dindonis, filed a complaint for conversion and replevin against Butler alleging that the Dance Collections had been Verdak's personal property. Over the Estate's objection, the Estate's action and Butler's pending action were consolidated on October 25, 2004.

On June 7, 2005, Butler filed a motion for summary judgment against the Estate and asserted that the undisputed facts showed that the statute of limitations barred the Estate's claims. Following discovery and the submission of briefs and evidence, the trial court granted Butler's motion on September 28, 2005, and dismissed the Estate's claims. The Estate appeals the order granting summary judgment in favor of Butler.

### Ownership of the Dance Collections

The parties vehemently disagree over whether Butler or Verdak owned the Dance Collections. The parties do not specifically ask us to decide the ownership issue on appeal; however, a brief summary of the parties' ownership arguments is necessary to fully appreciate all facets of the case.

The Estate argues that the Dance Collections were given to Verdak and that Butler was simply the bailee of the property. As evidence of its contention, the Estate cites a May 21, 1971, letter to Verdak from the Ballet Foundation, the original owner of the Ballet Russe Collection, which stated, "In answer to your question about the ownership of the Ballet Russe properties, it is safe to say the material is entirely yours.... [W]e think the arrangement with the Butler Dance Department is, without a doubt, in the best interest of the Foundation and the properties involved." Appellants' App. p. 316. This correspondence was addressed to "George Verdak, Head, Dance Department" and may have been directed to Verdak in his professional capacity. *Id.* The Estate also cites multiple newspaper and magazine articles to support its ownership claim. A 1994 *Chronicle of Higher Education* article is a characteristic example: "Mr. Verdak arranged for [the Ballet Russe Collection] to be warehoused [at Butler] in return for an agreement that the collection would not be broken up." *Id.* at 42.

Butler argues that Verdak, as the head of the Butler dance department, acted as an intermediary between Butler and the donors of the Dance Collections. It alleges that Verdak arranged for the Dance Collections to be stored at Butler but that he did not actually have an ownership interest in them. Butler claims, "it is apparent that the claim of Verdak's 'ownership' of this valuable collection is an after-the-fact fabrication cooked up by Liene Dindonis—an heir of an heir of an heir—some ten years after Verdak's death." Appellee's Br. p. 11.

To support its claim, Butler cites a 1976 grant application it filed with the Indiana Arts Commission, which purportedly proves that Butler has always claimed ownership to the collections:

In May 1971, Butler University *received title* to all of the settings and costumes of the *Ballet Russe de Monte Carlo* repertoire from 1938, the year of its inception, through 1965, the year of its final tour engagements.... This priceless

collection, added to existing Butler holdings and an extensive collection received from *Ruth Page* in 1969, brings to Indiana a collection of international significance to both art and dance. This grant is to provide for a composite inventory and catalogue of the holding. Appellants' App. p. 198 (emphases added). Butler also claims that Verdak knew about and agreed to Butler's ownership of the Dance Collections. It cites as evidence a letter that Butler sent to Verdak in June 1978 regarding his upcoming retirement:

> Any outstanding materials must be delivered to the University at this time, including stage scenery, costumes, and printed or xeroxed music.... It is especially important with respect to the materials that were given to Butler by the Ballet Foundation since it was the intent of the Foundation that the collection be kept intact.

*Id.* at 204. Butler argues that this letter clearly shows that the Ballet Foundation's intent was for Butler to be the owner of the Dance Collection and that Verdak was aware of Butler's ownership.

Finally, Butler notes that Glenn, the original administrator of the Estate, did not report any of the Dance Collection items when he filed the estate closing statement or his inheritance tax return in 1994. Additionally, neither Verdak nor Glenn made a claim against Butler for possession of the Dance Collections during either of their lifetimes. Butler maintains that this proves that the Estate did not have an ownership interest in the Dance Collections. The Estate rebuts this argument by stating that neither Verdak nor Glenn would have ever challenged Butler's possession of the Dance Collections because it was their belief that Butler was a bailee of the property and was holding the collections consistent to an agreement between Verdak and Butler.

## DISCUSSION AND DECISION

### I. The Estate's Appeal from Summary Judgment

The Estate appeals from the trial court's grant of summary judgment in favor of Butler. Butler argues that the trial court properly granted summary judgment because the Estate's claims of conversion and replevin were barred by their respective statutes of limitations. The Estate, on the other hand, alleges that the statute of limitations had not run on either of its claims, and summary judgment, therefore, was improper.

### A. Standard of Review

Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Am. Home Assurance Co. v. Allen,* 814 N.E.2d 662, 666 (Ind.Ct.App.2004). A party seeking summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *Tack's Steel Corp. v. ARC Constr. Co., Inc.,* 821 N.E.2d 883, 888 (Ind. Ct.App.2005). A factual issue is "genuine" if it is not capable of being conclusively foreclosed by reference to undisputed facts. *Am. Mgmt., Inc. v. MIF Realty, L.P.,* 666 N.E.2d 424, 428 (Ind.Ct.App. 1996). Although there may be genuine disputes over certain facts, a fact is "material" when its existence facilitates the resolution of an issue in the case. *Id.*

When we review a trial court's entry of summary judgment, we are bound by the same standard that binds the trial court. *Id.* We may not look beyond the evidence that the parties specifically designated for the motion for summary judgment in the trial court. *Best Homes, Inc. v. Rainwa-*

*ter,* 714 N.E.2d 702, 705 (Ind.Ct.App.1999). We must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. *Shambaugh & Son, Inc. v. Carlisle,* 763 N.E.2d 459, 461 (Ind.2002).

On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity. *Sizemore v. Erie Ins. Exch.,* 789 N.E.2d 1037, 1038 (Ind.Ct.App.2003). A party appealing from an order granting summary judgment has the burden of persuading us that the decision was erroneous. *Id.* at 1038–39. A grant of summary judgment may be affirmed upon any theory supported by the designated evidence. *Bernstein v. Glavin,* 725 N.E.2d 455, 458 (Ind.Ct.App.2000).

### B. Statute of Limitations

■ The Estate's replevin claim is governed by a six-year statute of limitations, Ind.Code § 34–11–2–7, and its conversion claim is governed by a two-year statute of limitations, I.C. § 34–11–2–4. To determine whether the statutes of limitations barred the Estate's claims, it is necessary to determine when the statutes began to run. It is the court's responsibility[5] to determine when a cause of action began to accrue. *Meisenhelder v. Zipp Exp., Inc.,* 788 N.E.2d 924, 927 (Ind.Ct. App.2003) (citing *Malachowski v. Bank One, Indianapolis,* 590 N.E.2d 559, 564 (Ind.1992)). Because Indiana is a "discovery rule" state, the statute of limitations does not begin to run until "the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury

had been sustained as the result of the tortious act of another." *Wehling v. Citizens Nat'l Bank,* 586 N.E.2d 840, 843 (Ind. 1992).

The Estate alleges that Butler began to adversely hold the Dance Collections that it had in its possession on September 25, 2002—the date the Estate sent a letter to Butler terminating the warehouse agreement that Butler had with Verdak. Therefore, the Estate argues that its lawsuit, filed on September 24, 2004, was initiated before the statutes of limitations expired on the conversion and replevin claims.

■ It is not necessary for us to resolve whether Butler or Verdak was the initial owner of the Dance Collections to determine when the statutes of limitations began to run on the Estate's claims. To determine when the statutes of limitations began to run, it is necessary to determine when Verdak knew or, in the exercise of ordinary diligence, could have discovered that Butler was claiming an ownership interest in the Dance Collections. After evaluating the parties' arguments, we find that the statute of limitations began to run in June 1978 when Louis Chenette, the Dean of Butler, sent Verdak a letter regarding his upcoming retirement:

> *Any outstanding materials* must be delivered to the University at this time, including stage scenery, costumes, and printed or xeroxed music. . . . *It is especially important with respect to the materials that were given to Butler by the Ballet Foundation* since it was the intent of the Foundation that the collection be kept intact.

5. In its brief, the Estate argues that the question of when the statute of limitations began to run amounts to a genuine issue of material fact that makes summary judgment improper. However, as noted in a case that the Estate cites multiple times, "it is well-established in Indiana law that it is the courts' responsibility to determine, based on the facts of each case, when the cause of action accrues." *Autocephalous Greek–Orthodox Church of Cyprus v. Goldberg and Feldman Fine Arts, Inc.,* 917 F.2d 278, 288 (7th Cir.1990).

Appellants' App. p. at 204 (emphases added). This letter would have alerted a reasonable person that Butler was claiming an ownership interest in the Dance Collections. Therefore, regarding the items that are in Butler's possession, the statutes of limitations on Verdak's conversion and replevin claims had both run by June 1984. Consequently, the conversion and replevin claims that the Estate asserted in its September 2004 complaint were filed two decades too late.

The Estate argues that Dean Chenette's letter did not put Verdak on notice that Butler was claiming an ownership interest in the Dance Collections because the letter used the word "given" rather than the word "gifted" and these words have a different legal effect. Appellants' Br. p. 21. We find that the letter made it clear that Butler's purpose was to retrieve any dance materials that were in Verdak's possession and that Dean Chenette's letter adequately conveyed this objective. Furthermore, Dean Chenette testified that Verdak, after receiving the letter, verbally assured him that "he had nothing more that belongs to Butler." *Id.* at 128. We conclude that the Estate's argument is unpersuasive and find that the trial court's grant of summary judgment was proper.

## II.  Cross–Appeals from the Defendants' Motion to Dismiss

We now turn to the interlocutory cross-appeals from the order partially granting the Defendants' motion to dismiss Butler's June 14, 2002, complaint regarding the Ballet Russe items found in the former Verdak–Glenn residence. The Defendants cross-appeal from the denial of their motion to dismiss Butler's replevin claim, ar-

guing that the nonclaim statute bars this claim. Butler cross-appeals from the trial court's order dismissing its conversion claim and Indiana Crime Victims' Relief Act claim.

### A.  Standard of Review

■ An Indiana Trial Rule 12(B)(6) motion to dismiss tests the legal sufficiency of a claim, not the facts supporting the claim. *Godby v. Whitehead,* 837 N.E.2d 146, 149 (Ind.Ct.App.2005), *trans. denied.* Therefore, we view the complaint in the light most favorable to the non-moving party and draw every reasonable inference in favor of that party. *Id.* When reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine if the trial court erred in its application of the law. *Id.* The trial court's grant of a motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id.* In determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record. *Id.*

### B.  Nonclaim Statute

The nonclaim statute provides that claims "founded on contract or otherwise, shall be forever barred against the estate, the personal representative, the heirs, devisees, and legatees of the decedent" unless they are filed within the prescribed time period.[6] Ind.Code § 29–1–14–1. In *Estate of Decker v. Farm Credit Services of Mid–America, ACA,* our Supreme Court explained the distinction between a nonclaim statute and a statute of limitations:

---

6. The nonclaim statute in effect when Glenn died on June 28, 2000, barred claims filed one year or more after the decedent's death. The legislature amended Indiana Code section 29–1–14–1 in 2001 to provide that all claims filed nine months or more after the decedent's death would be barred. This three-month time difference will not affect the resolution of the issues before us today.

[A nonclaim statute] grants to every person having a claim of any kind or character against a decedent's estate, the right to file the same in the court having jurisdiction thereof and have the same adjudicated, provided such claim is filed within the time specified in the statute. Unless such claim is filed within the time so allowed by the statute, it is forever barred. The time element is a built-in condition of the said statute and is of the essence of the right of action. Unless the claim is filed within the prescribed time set out in the statute, no enforceable right of action is created. While such statutes limit the time in which a claim may be filed or an action brought, they have nothing in common with and are not to be confused with general statutes of limitation. The former creates a right of action if commenced within the time prescribed by the statute, whereas the latter creates a defense to an action brought after the expiration of the time allowed by law for the bringing of such an action.

684 N.E.2d 1137, 1138–1139 (Ind.1997)). The *Decker* court held that even after the legislative amendments in 1990, Indiana Code section 29–1–14–1 "clearly remains a nonclaim provision" that is not subject to equitable tolling and a "court is without power to extend the time limits prescribed by a nonclaim statute." *Id.* at 1139. We have consistently held that a "claim" for purposes of the nonclaim statute is restricted to a "debt or demand of a pecuniary nature which could have been enforced against the decedent *in his lifetime* and could have been reduced to a simple money judgment." *Cardwell v. Estate of Kirkendall,* 712 N.E.2d 1047, 1049 (Ind.Ct.App. 1999) (emphasis in original).

■ The nonclaim statute deadline is uncompromising. In *Burnett v. Villaneuve,* we dismissed a claim that was filed against an estate *exactly one year* after the decedent's death and held that "[n]o matter who the creditor, no matter the reason for delay, the one-year nonclaim statute must be complied with in order to bring a claim against the estate." 685 N.E.2d 1103, 1110 (Ind.Ct.App.1997) (interpreting version of nonclaim statute that barred claims filed one year or more after decedent's death). Once the nonclaim statute time limit has expired, the trial court does not have jurisdiction to rule on the case. *See In re Paternity of M.G.S.,* 756 N.E.2d 990 (Ind.Ct.App.2001) (holding that the trial court did not have subject matter jurisdiction over the paternity suit because the father filed his claim after the thirty-day nonclaim statute had run). As the statute states, if a claim is not filed within the prescribed time period, the claim is "forever barred." I.C. § 29–1–14–1(a).

### C. The Replevin Claim

The Defendants argue that the trial court erred when it failed to dismiss Butler's replevin claim. In particular, they contend that the nonclaim statute bars the claim; therefore, the trial court should have granted its motion to dismiss.

■ We find that the nonclaim statute does not cover Butler's replevin claim because section 29–1–14–21 of the Probate Code makes the replevin claim permissive but not mandatory:

When any person claims any interest in any property in the possession of the personal representative adverse to the estate, the person *may file,* prior to the expiration of three (3) months after the date of the first published notice to creditors, a petition with the court having jurisdiction of the estate setting out the facts concerning such interest. . . .

(Emphasis added). As we held in *Estate of Baker v. Lahrman,* Indiana Code sec-

tion 29–1–14–21, unlike the nonclaim statute, is not mandatory. 505 N.E.2d 104, 105 (Ind.Ct.App.1987). "Although a party may not have his interest litigated as part of the estate proceedings if he fails to bring it within the statutorily prescribed time, he may pursue his action in other courts against the distributees." *Id.* at 105 n. 4. Therefore, we find that Butler's replevin claim was not mandatory under Indiana Code section 29–1–14–21, and the claim is not barred merely because Butler chose not to pursue it directly against the Estate.

■ For that reason, it was permissible for Butler to advance its replevin claim against whomever it believed wrongfully possessed its property—the Defendants. However, Butler's replevin claim is still subject to a six-year statute of limitations under Indiana Code section 34–11–2–7. When reviewing a motion to dismiss, we look only to the complaint to determine whether any facts will support the claim. *Godby*, 837 N.E.2d at 149. Paragraph 10 of Butler's complaint states that in "early June 2002" Butler learned that the Defendants were selling dance artifacts from Verdak's former residence. Appellee's App. p. 29. According to Butler's complaint, the six-year statute of limitations governing the replevin claim began to run in early June 2002 and, therefore, Butler timely filed its complaint on June 14, 2002. Based on these assertions, the trial court properly denied Defendants' motion to dismiss the replevin claim.

### D. The Conversion Claim

■ Butler argues that the trial court erroneously dismissed its claim for conversion because it adequately set forth allegations in its complaint to support such relief. To state a valid claim for conversion, and thus survive a motion to dismiss, Butler must allege facts showing that it has "an immediate, unqualified right to possession resting on a superior claim of title" and establish the "appropriation of personal property by another for that party's own use and benefit in exclusion and defiance of the owner's rights." *Shourek v. Stirling*, 621 N.E.2d 1107, 1109 (Ind.1993).

Butler asserts that the nonclaim statute does not bar its conversion claim because the factual basis supporting the claim arose after Glenn died and Butler properly filed its lawsuit against the Defendants, not Glenn's estate. I.C. § 29–1–14–1(d) (bars claims against estate filed nine months after decedent's death); *Cardwell*, 712 N.E.2d at 1049 (holding that a "claim" for nonclaim statute purposes refers to a debt or demand of a pecuniary nature that could have been enforced against the decedent in his lifetime and could have been reduced to a simple money judgment).

■ When our Legislature enacted the nonclaim statute, it made a policy decision that the statute would "serve[ ] to effectuate a public policy desirous of creating a definite and certain period of time within which the assets of the estate will become fixed and administration promptly proceeded with." *Anson v. Anson's Estate*, 399 N.E.2d 432, 436 (Ind.Ct.App. 1980). While it may appear that the strict deadlines imposed by the nonclaim statute are unfair and restrict lawful claims against an estate, the personal representative, the heirs, and the devisees of the decedent, our Legislature enacted the statute to impose finality after a decedent's death. We are unable to raise Verdak or Glenn from the grave and punish either of them for allegedly hoarding Ballet Russe memorabilia in the basement of Verdak's residence. Our Legislature has chosen to bar claims made against an estate, the personal representative, or the heirs if those claims fall outside of the time period prescribed by the nonclaim statute. As

there is no evidence to the contrary, we believe it was the Legislature's intent to bar a conversion claim such as Butler's through the nonclaim statute.

We have previously held that "[n]o matter who the creditor, no matter the reason for delay, the one-year nonclaim statute must be complied with in order to bring a claim against the estate." *Burnett*, 685 N.E.2d at 1110. Butler cannot avoid the nonclaim statute merely by filing its conversion claim against the Defendants— Dindonis in her individual capacity and as the representative of the Glenn estate, Crider, and Liebovitz. We find that the nonclaim statute applies to Butler's conversion claim and bars the claim because it was not filed within one year of Glenn's death on June 28, 2000. Therefore, the trial court properly granted the Defendant's motion to dismiss this claim.

### E. Statutory Damages Claim

Butler argues that the trial court erroneously dismissed its claim for statutory damages under the Indiana Crime Victims' Relief Act. Specifically, Butler argues that it set forth facts in its complaint to support such relief.

To assert a claim under the Crime Victims' Relief Act, Butler must set forth facts showing that the Defendants "knowingly or intentionally exert[ed] unauthorized control over the property of [Butler]," I.C. § 35-43-4-3, and that those acts led to Butler's pecuniary loss, I.C. § 34-24-3-1. Butler starkly asserts the elements of criminal conversion in its complaint, stating that "Defendants have knowingly or intentionally exerted unauthorized control over the property of Butler." Appellee's App. p. 34. Butler does not allege any facts that suggest that the Defendants sold the Ballet Russe property with knowledge that the property had been stolen from Butler. Butler's mere quotation of the statutory language is not sufficient to support relief under the Indiana Crime Victim's Relief Act; therefore, the trial court properly granted the Defendants' motion to dismiss this claim.

### CONCLUSION

In light of our discussion above, we conclude that the trial court properly granted Butler's motion for summary judgment on the Estate's conversion and replevin claims because those claims were barred by their respective statutes of limitations, which began to run in 1978. Additionally, the trial court properly denied the Defendants' motion to dismiss Butler's replevin claim because the nonclaim statute does not cover the claim and, as alleged in Butler's complaint, the claim was timely. Finally, we conclude that the trial court properly granted the Defendants' motion to dismiss Butler's claims for conversion and statutory damages because the former is barred by the nonclaim statute and Butler did not allege facts in its complaint to support the latter.

The judgment of the trial court is affirmed and remanded for further proceedings on the remaining claims.

VAIDIK, J., and CRONE, J., concur.