# FOR PUBLICATION



FILED
Feb 13 2013, 8:24 am

CLERK
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| ATTORNEY FOR APPELLANT: | ATTORNEY FOR APPELLEES: |
| **JASON W. BENNETT** | **JOHN JOHNSTON** |
| Bennett Boehning & Clary LLP | Johnston & Johnston |
| Lafayette, Indiana | Wabash, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE ESTATE )
OF SAMUEL L. TOLLEY, Deceased, )
)
FIRST MERCHANTS BANK, N.A., )
)
    Appellant, )
)
        vs. )    No. 52A02-1208-EU-671
)
DUANE EARL TOLLEY, and )
BETTY JUNE TOLLEY, )
)
    Appellees. )

APPEAL FROM THE MIAMI SUPERIOR COURT
The Honorable Daniel C. Banina, Judge
Cause No. 52D02-1012-EU-35

**February 13, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

First Merchants Bank, N.A., ("First Merchants") appeals the trial court's order granting summary judgment to the Estate of Samuel Tolley (the "Estate"). First Merchants raises one issue which we revise and restate as whether the court erred in granting the Estate's motion for summary judgment and in denying its motion for summary judgment. We reverse and remand.

FACTS

Samuel Tolley died on November 17, 2010. On December 17, 2010, Betty Tolley and Duane Tolley by their attorney, James Berkshire, filed a petition for appointment of co-personal representatives and for unsupervised administration.[1] That same day, Berkshire called First Merchants and stated that Samuel died on November 17, 2010, that he was the attorney for the personal representatives for the Estate and had filed pleadings and other documents to open administration of the Estate, and that proceedings had been filed in Miami Superior Court II. Berkshire also asked First Merchants to send him copies of their records of the accounts Tolley had on deposit with them. That same day, First Merchants faxed a document to Berkshire which detailed Samuel's customer information and under the "Comment Line" stated "SAMUEL DECD 11/17/10." Appellant's Appendix at 74.

On December 31, 2010, and again on January 7, 2011, a Notice of Administration was published in the Peru Tribune. The notice provided information related to the proceeding before the trial court including the cause number as well as the address and phone number for the Estate's attorney and stated:

---

[1] The record does not contain a copy of this petition.

Notice is hereby given that on the 21st day of December, 2010, Betty June Tolley and Duane Earl Tolley, were appointed Co-Personal Representatives of the Unsupervised Estate of Samuel L. Tolley, deceased, who died on the 17th day of November, 2010.

All persons having claims against this estate, whether or not now due, must file the claim in the office of the Clerk of this Court within three (3) months from the date of the first publication of this notice, or within nine (9) months after the decedent's death, whichever is earlier, or the claims will be forever barred.

Dated at Peru, Indiana, this 21st day of December, 2010.

Id. at 71.

First Merchants sent delinquency notices addressed to Samuel and Betty beginning in December 2010. First Merchants also sent letters to Betty that were dated March 18, 2011, and May 18, 2011, that indicated that the grace period on her loan was approaching and provided steps to avoid a late charge. In a letter dated July 6, 2011, and addressed to Betty, First Merchants stated that the account was "seriously past due." Id. at 102.

COURSE OF PROCEEDINGS

On July 26, 2011, First Merchants filed Claim No. 1 against the Estate with respect to an adjustable rate note which was secured by a mortgage and requested principal, total fees, interest, attorney fees, and costs which totaled $23,650.03. First Merchants attached an adjustable rate note to the claim which was signed by Samuel and Betty Tolley as borrowers. That same day, First Merchants filed Claim No. 2 against the Estate requesting a total of $134,251.94 related to an adjustable rate note which was

3

secured by a mortgage. The note and mortgage were signed by Duane Reavis, Samuel, and Betty as borrowers.[2]

On February 6, 2012, the Estate filed a motion for summary judgment and alleged that "there is no genuine issue as to any material fact and the [Estate] is entitled to judgment as a matter of law on the issue of whether the claims of [First Merchants] were filed within three (3) months after the date of the first published notice to creditors as required by IC 29-1-14-1." Id. at 63. That same day, the court scheduled a hearing for March 6, 2012.

On March 6, 2012, the parties filed a joint motion to continue the hearing, and the court granted the motion. That same day, First Merchants filed a cross-motion for summary judgment alleging that there were no genuine issues of material fact and that Claims 1 and 2 were timely as a matter of law. On April 25, 2012, the court granted the motion for hearing on summary judgment and scheduled a hearing for June 5, 2012. On June 5, 2012, the court held a hearing on the motions for summary judgment.

On August 20, 2012, the court granted the Estate's motion for summary judgment. The court's order states:

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ON BEHALF OF ESTATE

---

[2] On August 25, 2011, First Merchants filed Claim No. 3 against the Estate in which First Merchants sought a total of $36,317.20. First Merchants acknowledged in its cross-motion for summary judgment that Claim No. 3 filed against the Estate on August 25, 2011, was filed after the nine-month deadline. At the hearing on the motions for summary judgment, First Merchants' attorney stated: "There was also then the one claim filed on the August date which in our cross-motion we concede that it's not within the 9 months provided by statute and so First Merchants does concede that the August claim is in fact time barred." Transcript at 5. First Merchants' attorney later stated: "Again, to be clear, claim #3 which was filed on August 25 was eight days late and is therefore time-barred." Id. at 7.

4

On June 5, 2012 the Court heard argument pursuant to the Estate's Motion for Summary Judgment against Claims #1 and #2 filed by [First Merchants]. The Estate asserts that the claims were not timely filed. Whereas [First Merchants] asserts they were not given proper notice. There is no factual issue in this case. The issue is whether the notice provided by attorney James Berkshire on November 17, 2010 constitutes substantial compliance with the notice requirements. The Court finds that the Personal Representative is not required to serve notice to [First Merchants] because [First Merchants] had actual knowledge of the death of Samuel Tolley and that the administration had been opened on the Tolley Estate. This occurred on [December] 17, 2010 when attorney James Berkshire called [First Merchants] and gave them that information. That knowledge was confirmed by records of [First Merchants] faxed to counsel on December 17, 2010 with a notation "SAMUEL DECD 11/17/10".

Since [First Merchants] had actual knowledge of the death of Samuel Tolley and his administration of the estate there is no reason to serve it with actual written notice.

Wherefore, because on December 17, 2010 [First Merchants] had actual knowledge of the decedent's death and estate administration the Court finds that Claims #1 and #2 are untimely filed and therefore are ordered barred and dismissed.

**ALL OF WHICH IS ORDERED** this 10th day of August 2012.

Id. at 6.

## ISSUE / STANDARD OF REVIEW

The issue is whether the trial court erred in granting the Estate's motion for summary judgment and in denying First Merchants' motion for summary judgment. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment motion is

5

limited to those materials designated to the trial court. Id. We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. Id. at 974. Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. Cowe by Cowe v. Forum Grp., Inc., 575 N.E.2d 630, 633 (Ind. 1991).

A party moving for summary judgment bears the initial burden of showing no genuine issue of material fact and the appropriateness of judgment as a matter of law. Monroe Guar. Ins. Co. v. Magwerks Corp., 829 N.E.2d 968, 975 (Ind. 2005). If the movant fails to make this *prima facie* showing, then summary judgment is precluded regardless of whether the non-movant designates facts and evidence in response to the movant's motion. Id. In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. Catt v. Bd. of Commr's of Knox Cnty., 779 N.E.2d 1, 3 (Ind. 2002).

The fact that the parties make cross motions for summary judgment does not alter our standard of review. Hartford Acc. & Indem. Co. v. Dana Corp., 690 N.E.2d 285, 291 (Ind. Ct. App. 1997), trans. denied. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. Id. The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of material fact to be resolved. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact

6

and conclusions of law.  Id.  They merely aid our review by providing us with a statement of reasons for the trial court's actions.  Id.

ANALYSIS

This case requires us to interpret the statutes relating to notice requirements in the Probate Code.  When interpreting a statute, we independently review a statute's meaning and apply it to the facts of the case under review.  Bolin v. Wingert, 764 N.E.2d 201, 204 (Ind. 2002).  If a statute is unambiguous, we must give the statute its clear and plain meaning.  Id.  A statute is unambiguous if it is not susceptible to more than one interpretation.  Elmer Buchta Trucking, Inc. v. Stanley, 744 N.E.2d 939, 942 (Ind. 2001). If a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent.  Bolin, 764 N.E.2d at 204.  A statute should be examined as a whole, avoiding excessive reliance upon a strict literal meaning or the selective reading of individual words.  Mayes v. Second Injury Fund, 888 N.E.2d 773, 776 (Ind. 2008).

We begin with a discussion of the difference between a nonclaim statute and a statute of limitation as well as the difference between nonclaim statutes that are self-executing and those that are not self-executing.  The Indiana Supreme Court has addressed the distinction between nonclaim statutes and statutes of limitation as follows:

> The distinction between nonclaim statutes and statutes of limitation is explained in Donnella v. Crady, 135 Ind. App. 60, 185 N.E.2d 623 (1962):
>
> > [A] nonclaim statute . . . grants to every person having a claim of any kind or character against a decedent's estate, the right to file the same in the court having jurisdiction thereof and have the same adjudicated, provided such claim is filed within the time specified in the statute.  Unless such

7

claim is filed within the time so allowed by the statute, it is forever barred. The time element is a built-in condition of the said statute and is of the essence of the right of action. Unless the claim is filed within the prescribed time set out in the statute, no enforceable right of action is created.

While such statutes limit the time in which a claim may be filed or an action brought, they have nothing in common with and are not to be confused with general statutes of limitation. The former creates a right of action if commenced within the time prescribed by the statute, whereas the latter creates a defense to an action brought after the expiration of the time allowed by law for the bringing of such an action.

Id. at 62-63, 185 N.E.2d at 624. Thus, the statute is a nonclaim statute when "there is clearly evidenced a legislative intent in [the] statute to not merely withhold the remedy, but to take away the right of recovery where a claimant fails to present his claim as provided in the statute." Rising Sun State Bank v. Fessler, 400 N.E.2d 1164, 1166 (Ind. Ct. App. 1980). While equitable principles may extend the time for commencing an action under statutes of limitation, nonclaim statutes impose a condition precedent to the enforcement of a right of action and are not subject to equitable exceptions. See Id.; Anson v. Anson's Estate, 399 N.E.2d 432, 435 (Ind. Ct. App. 1980); Donnella, 135 Ind. App. at 63-64, 185 N.E.2d at 625.

Estate of Decker v. Farm Credit Servs. of Mid-America, ACA, 684 N.E.2d 1137, 1138-1139 (Ind. 1997).

A nonclaim statute that is triggered solely by the death of the decedent is a self-executing statute, while a nonclaim statute that is not self-executing involves state action. See id. at 1140 n.4 (observing that the nonclaim statute at issue in Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 108 S. Ct. 1340 (1988), was not self-executing because the probate court was intimately involved throughout and without that involvement the time bar was never activated); Burnett v. Villaneuve, 685 N.E.2d 1103, 1111 (Ind. Ct. App. 1997) (observing that the Indiana Supreme Court in Decker, 684

8

N.E.2d 1137, noted that the one-year provision was triggered by the death of the decedent, not government machinery, authority or power and was therefore self-executing).

We observe that the United States Supreme Court has held that the Fourteenth Amendment protects property interests only from a deprivation by state action. Pope, 485 U.S. at 485, 108 S. Ct. at 1345. Private use of state-sanctioned private remedies or procedures does not rise to the level of state action. Id. Nor is the state's involvement in the mere running of a general statute of limitations generally sufficient to implicate due process. Id. at 485-486, 108 S. Ct. at 1345. "But when private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found." Id. at 486, 108 S. Ct. at 1345.

The Court in Pope addressed whether the state's involvement with a nonclaim statute was substantial enough to implicate the Due Process Clause and explained why the Oklahoma nonclaim statute at issue was not self-executing as follows:

> The probate court is intimately involved throughout, and without that involvement the time bar is never activated. The nonclaim statute becomes operative only after probate proceedings have been commenced in state court. . . . It is only after all of these actions take place that the time period begins to run, and in every one of these actions, the court is intimately involved. This involvement is so pervasive and substantial that it must be considered state action subject to the restrictions of the Fourteenth Amendment.

Id. at 487, 108 S. Ct. at 1346. The Court held that "whether a particular method of notice is reasonable depends on the particular circumstances." Id. at 484, 108 S. Ct. at 1344. The Court discussed creditors' interests as well as the state's interest in the expeditious resolution of probate proceedings. Id. at 489, 108 S. Ct. at 1347. The Court observed

9

that the executor or executrix would often be a party with a beneficial interest in the estate and that "[t]his could diminish an executor's or executrix's inclination to call attention to the potential expiration of a creditor's claim. There is thus a substantial practical need for actual notice in this setting." Id. The Court concluded that "[p]roviding actual notice to known or reasonably ascertainable creditors, however, is not inconsistent with the goals reflected in nonclaim statutes. Actual notice need not be inefficient or burdensome. We have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice." Id. at 489-490, 108 S. Ct. at 1347.

While the federal Due Process Clause is implicated when a provision is not self-executing, the clause is not implicated when a provision is self-executing. As an example, in Decker, the Indiana Supreme Court addressed the former version of Ind. Code § 29-1-7-7 which provided that "a claim subject to this subsection may not be filed more than one (1) year after the death of the decedent."[3] 684 N.E.2d at 1139. The Court held that the federal Due Process Clause was not implicated because the provision was self-executing. See id.

With this background in mind, we turn to the relevant provisions found in the Probate Code. Ind. Code § 29-1-14-1 contains general time limitations related to claims against an estate. Ind. Farmers Mut. Ins. Co. v. Richie, 707 N.E.2d 992, 993 (Ind. 1999). Subsection (d) bars claims against a decedent's estate if not filed within nine months after

---

[3] Ind. Code § 29-1-7-7(e) was amended in 2001 and now provides that "a claim filed under IC 29-1-14-1(a) more than nine (9) months after the death of the decedent is barred." See Pub. L. No. 252-2001, § 12 (eff. July 1, 2001).

10

the death of the decedent.  As a general matter, subsection (a) bars all claims unless they are filed within three months after the first published notice to creditors.[4]  However,

---

[4] Ind. Code § 29-1-14-1 provides:

(a)    Except as provided in IC 29-1-7-7, all claims against a decedent's estate, other than expenses of administration and claims of the United States, the state, or a subdivision of the state, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, shall be forever barred against the estate, the personal representative, the heirs, devisees, and legatees of the decedent, unless filed with the court in which such estate is being administered within:

> (1)    three (3) months after the date of the first published notice to creditors; or
>
> (2)    three (3) months after the court has revoked probate of a will, in accordance with IC 29-1-7-21, if the claimant was named as a beneficiary in that revoked will;

whichever is later.

(b)    No claim shall be allowed which was barred by any statute of limitations at the time of decedent's death.

(c)    No claim shall be barred by the statute of limitations which was not barred at the time of the decedent's death, if the claim shall be filed within:

> (1)    three (3) months after the date of the first published notice to creditors; or
>
> (2)    three (3) months after the court has revoked probate of a will, in accordance with IC 29-1-7-21, if the claimant was named as a beneficiary in that revoked will;

whichever is later.

(d)    All claims barrable under subsection (a) shall be barred if not filed within nine (9) months after the death of the decedent.

(e)    Nothing in this section shall affect or prevent any action or proceeding to enforce any mortgage, pledge, or other lien upon property of the estate.

(f)    Nothing in this section shall affect or prevent the enforcement of a claim for injury to person or damage to property arising out of negligence against the estate of a deceased tort feasor within the period of the statute of limitations provided for the tort action.  A tort claim against the estate of the tort feasor may be opened or reopened and suit filed against the special representative of the estate within the period of the statute of limitations of the tort.  Any recovery against

11

subsection (a) states "[e]xcept as provided in IC 29-1-7-7 . . . ." Both parties cite Ind.

Code § 29-1-7-7, which governs notice of administration. See Burnett, 685 N.E.2d at

1106 ("Because the creditors in this case were known, the personal representative's

notice is governed by I.C. 29-1-7-7 . . . ."). The statute provides:

(a) As soon as letters testamentary or of administration, general or special, supervised or unsupervised, have been issued, the clerk of the court shall publish notice of the estate administration.

(b) The notice required under subsection (a) shall be published in a newspaper of general circulation, printed in the English language and published in the county where the court is located, once each week for two (2) consecutive weeks. A copy of the notice, with proof of publication, shall be filed with the clerk of the court as a part of the administration of the estate within thirty (30) days after the publication. If no newspaper is published in the county, the notice shall be published in a newspaper published in an adjacent county.

(c) The notice required under subsection (a) shall be served by first class postage prepaid mail on each heir, devisee, legatee, and known creditor whose name and address is set forth in the petition for probate or letters, except as otherwise ordered by the court. The personal representative shall furnish sufficient copies of the notice, prepared for mailing, and the clerk of the court shall mail the notice upon the issuance of letters.

(d) *The personal representative or the personal representative's agent shall serve notice on each creditor of the decedent:*

   (1) whose name is not set forth in the petition for probate or letters under subsection (c);

---

the tort feasor's estate shall not affect any interest in the assets of the estate unless the suit was filed within the time allowed for filing claims against the estate. The rules of pleading and procedure in such cases shall be the same as apply in ordinary civil actions.

12

(2) *who is known or reasonably ascertainable within one (1) month after the first publication of notice under subsection (a); and*

(3) whose claim has not been paid or settled by the personal representative.

*The notice may be served by mail or any other means reasonably calculated to ensure actual receipt of the notice by a creditor.*

(e) Notice under subsection (d) shall be served within one (1) month after the first publication of notice under subsection (a) or as soon as possible after the elapse of one (1) month. If the personal representative or the personal representative's agent fails to give notice to a known or reasonably ascertainable creditor of the decedent under subsection (d) within one (1) month after the first publication of notice under subsection (a), the period during which the creditor may submit a claim against the estate includes an additional period ending two (2) months after the date notice is given to the creditor under subsection (d). However, a claim filed under IC 29-1-14-1(a) more than nine (9) months after the death of the decedent is barred.

(f) A schedule of creditors that received notice under subsection (d) shall be delivered to the clerk of the court as soon as possible after notice is given.

\* \* \* \* \*

(i) The notice shall read substantially as follows:

NOTICE OF ADMINISTRATION

In the_____Court of_____County, Indiana.

Notice is hereby given that _____ was, on the____day of_____, 20__, appointed personal representative of the estate of_____, deceased, who died on the___day of_____, 20__.

All persons who have claims against this estate, whether or not now due, must file the claim in the office of the clerk of this court within three (3) months from the date of the first publication of this notice,

13

or within nine (9) months after the decedent's death, whichever is earlier, or the claims will be forever barred.

Dated at_____, Indiana, this___day of_____, 20__.

_____
CLERK OF THE_____COURT
FOR_____COUNTY, INDIANA

Ind. Code § 29-1-7-7 (emphases added).[5]

Ind. Code § 29-1-14-21 provides:

When any person claims any interest in any property in the possession of the personal representative adverse to the estate, the person may file, prior to the expiration of three (3) months after the date of the first published notice to creditors, a petition with the court having jurisdiction of the estate setting out the facts concerning such interest, and thereupon the court shall cause such notice to be given to such parties as it deems proper, and the case shall be set for trial and tried as in ordinary civil actions.

"While it is true Indiana Code section 29-1-14-21 provides that a person with an interest in property held by the personal representative 'may' file a petition with the probate court, the statute is silent regarding the consequences of failing to do so." Bettenhausen v. Godby, 878 N.E.2d 1277, 1279 (Ind. Ct. App. 2008). "This Court, however, has held that 'the consequence of a failure to file a timely claim under IC 29-1-14-21 is that the claimant must proceed against the distributees [of the estate] rather than the estate.'" Id. (quoting Estate of Penzenik v. Penz Products, Inc., 749 N.E.2d 61, 64-65 (Ind. Ct. App. 2001)). "The obvious purpose of Indiana Code section 29-1-14-21 is to 'promote [ ] the expeditious conclusion of estate proceedings' . . . ." Id. at 1279 n.3 (quoting In re Williams' Estate, 398 N.E.2d 1368, 1371 (Ind. Ct. App. 1980)).

---

[5] The Estate does not argue that First Merchants was not a creditor who was known or reasonably ascertainable within one month after the first publication of notice or that Ind. Code § 29-1-7-7(d) is not applicable for any other reason.

14

First Merchants argues that subsection (d) of Ind. Code § 29-1-7-7 requires notice by mail or any other means reasonably calculated to ensure actual receipt of the notice and that the statute strongly implies that notice must be given in writing. First Merchants argues that actual written notice is the bare minimum Due Process requires. First Merchants also argues that even if notice by telephone could satisfy the statute in form, the substance of the Estate's phone call was insufficient because it provided none of the critical information required by the statute. Specifically, First Merchants points to subsection (i) of the statute and alleges that "the statute reveals five pieces of information that are critical to a valid Notice – (1) *where* the estate is being administered, (2) *who* the personal representatives are, (3) *how* to file a claim, (4) *when* the claims deadline expires, and (5) *why* it matters." Appellant's Brief at 7. First Merchants also argues that it was entitled to summary judgment because its claims filed on July 26, 2011 were filed well before the nine-month deadline which expired on August 17, 2011.

The Estate argues that Ind. Code § 29-1-7-7 does not require written notice and that written notice would not serve any purpose because First Merchants already knew Samuel died on November 17, 2010 and that administration had been opened on his estate. The Estate also argues that Due Process does not require notice where there is actual knowledge. The Estate argues that the Probate Code requires creditors to file their claims within three months after the first publication of notice to creditors and First Merchants did not file any claim until almost seven months after the first published notice to creditors. The Estate contends that dismissal of the claims does not prevent First

15

Merchants from foreclosing the mortgages or from recovering any deficiency from Betty Tolley and Duane Reavis.

We observe that the relevant statutes include more than just the portion of Ind. Code § 29-1-7-7(e) indicating that a claim is barred if it is not filed within nine months after the death of the decedent. Rather, Ind. Code § 29-1-7-7(d) cannot be described as self-executing in that it involves state action as it requires notice by the personal representative to creditors who are known or reasonably ascertainable within one month after the first publication of notice under subsection (a), which is notice by the clerk of the court. Accordingly, we conclude that the Due Process Clause applies.

Ind. Code § 29-1-7-7(d) requires that the personal representative serve notice on each creditor who was known or reasonably ascertainable, and subsection (i) provides that the notice shall include a statement informing the creditor of the time period for filing a claim. Specifically, subsection (i) provides that the notice should read substantially as follows: "All persons who have claims against this estate, whether or not now due, must file the claim in the office of the clerk of this court within three (3) months from the date of the first publication of this notice, or within nine (9) months after the decedent's death, whichever is earlier, or the claims will be forever barred." We acknowledge that subsection (i) does not specifically mention a time period for filing a claim following a notice given to a creditor who was known or reasonably ascertainable under subsection (d). However, subsection (i), which governs the notice, includes a statement regarding the time period for filing a claim. Reading subsections (d), (e), and (i) together, we conclude that a notice provided under subsection (d) must include a time

16

period for filing a claim. See Kristin G. Fruehwald, *Notice to Creditors – Publication is No Longer Enough*, 24 IND. L. REV. 1045, 1055 (1991) ("To comply with due process, notice to a decedent's creditors should contain statements not only that the decedent died but also that a time limitation will affect any claims that are not presented prior to the running of the limitation period. . . . [T]he statutorily prescribed notice should be tailored to reflect the actual expiration of the nonclaims period applicable to the particular claimant.").[6]

Even though First Merchants had actual notice of the decedent's death, the phone call from the attorney for the personal representatives did not meet the requirement of informing First Merchants of the time period for filing a claim. See Pope, 485 U.S. at 489, 108 S. Ct. at 1347 (citing City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 73 S. Ct. 299 (1953) (holding Bankruptcy's Code's requirement of "reasonable notice" requires actual notice of deadline for filing claims) and observing that there is a substantial practical need for actual notice in this setting given that an executor's inclination to call attention to the potential expiration of a creditor's claim could be diminished by the executor's beneficial interest in the estate); Estate of Jenkins v.

---

[6] This article also stated:

> Questions exist pertaining to whether a creditor's *actual* knowledge that the decedent had died would be sufficient notice under *Pope*. *Knowledge of a debtor's death should not, however, constitute sufficient notice because it does not give the creditor knowledge that a time limitation is running against the creditor*, any knowledge of the pendency of the action, or the opportunity to present the creditor's claim. Support for this proposition is found in *Pope*. The claim in *Pope* arose from services rendered by the hospital in which the decedent died. The claimant was a subsidiary of the hospital and had actual notice of the decedent's death. This actual notice of the death was not sufficient to overcome the lack of notice of the proceedings.

24 IND. L. REV. at 1053-1054 (emphasis added and footnote omitted).

Guyton, 912 S.W.2d 134, 137-138 (Tenn. 1995) (holding that while the term "actual notice" in the Tennessee statute may be something other than an exact copy of the published *Notice to Creditors* outlined in the statute, such notice must, at a minimum, include information regarding the commencement of probate proceedings and the time period within which claims must be filed with the probate court and concluding that the creditor's claim was timely filed where the letter received by the creditor did not contain this information and the creditor's claim was filed within one year of the decedent's death). Based upon the designated evidence, we cannot say that First Merchants received proper notice. Accordingly, First Merchants' claims filed on July 26, 2011 which occurred within nine months of Samuel's death were timely filed.

For the foregoing reasons, we reverse the trial court's grant of summary judgment to the Estate and denial of First Merchants' motion for summary judgment. We remand for proceedings consistent with this opinion.

Reversed and remanded.

BAILEY, J., and VAIDIK, J., concur.